# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

| | | |
|---|---|---|
| **TODO PHILLIPS, JODI PHILLIPS, BROOKE PHILLIPS, and ABBY PHILLIPS** | * | **CIVIL ACTION NO: 17-1524** |
| **VERSUS** | * | **DISTRICT JUDGE JAMES** |
| **JULIAN WHITTINGTON, individually and in his official capacity as SHERIFF OF BOSSIER PARISH, LT. BRUCE BLETZ, individually and in his official capacity, HUGO HOLLAND, individually and in his official capacity as SPECIAL PROSECUTOR FOR THE BOSSIER PARISH DISTRICT ATTORNEY'S OFFICE, J. SCHUYLER MARVIN, in his official capacity as DISTRICT ATTORNEY FOR BOSSIER PARISH, and UNKNOWN BOSSIER PARISH SHERIFF DEPUTIES, JOHN AND JANE DOES 1-100** | * | **MAGISTRATE JUDGE HORNSBY** |

### FIRST AMENDEDAND SUPPLEMENTAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. § 1983

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, Plaintiffs, Todd Phillips, Jodi Phillips, Brooke Phillips, and Abby Phillips, respectfully file this First Amended and Supplemental Complaint to further set forth facts in support of Plaintiffs' claims:

1.

This is a civil rights action brought by the Plaintiffs, Todd Phillips, Jodi Phillips,

Brooke Phillips, and Abby Phillips, seeking damages and injunctive relief pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Louisiana Constitution Article 1, §§ 2, 3, 5, 25, and Louisiana Civil Code Articles 2315 *et seq*.

## JURISDICTION AND VENUE

### 2.

This Court has original jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1343(a)(3) and 1331.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because said claims are related to Plaintiff's § 1983 claims, which are within this Court's original jurisdiction, since they arise out of the same case or controversy under Article III of the United States Constitution.

### 3.

Venue is proper herein under 28 U.S.C. § 1391(b) because defendants reside in this judicial district and the events giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES TO THE ACTION

### 4.

Plaintiffs herein are:

A.     Todd Phillips, a person of the full age of majority, is a resident, citizen, and domiciliary of Marshall, Harrison County, Texas;

B.     Jodi Phillips, wife of Todd Phillips and a person of the full age of majority who is a resident, citizen, and domiciliary of Marshall, Harrison County,

Texas;

C. Brooke Phillips, daughter of Todd and Jodi Phillips and a person of the full age of majority who is a resident, citizen, and domiciliary of Elm Grove, Louisiana; and

D. Abby Phillips, daughter of Todd and Jodi Phillips and a person of the full age of majority who is a resident, citizen, and domiciliary of Marshall, Harrison County, Texas.

5.

Made defendants herein are:

A. SHERIFF JULIAN WHITTINGTON ("Sheriff Whittington"), individually and in his official capacity as Sheriff of the Bossier Parish Sheriff's Department, who is a person of the full age of majority and a resident of the Western District of Louisiana.  At all relevant times herein, Sheriff Whittington was acting under the color of state law and in the course and scope of his employment as the Sheriff of Bossier Parish;

B. LT. BRUCE BLETZ ("Lt. Bletz"), individually, who is a person of the full age of majority, a resident of the Western District of Louisiana, and is employed by the Bossier Parish Sheriff's Department.  At all relevant times Lt. Bletz was acting under the color of state law and in the course and scope of his employment as an investigator for the Bossier Parish Sheriff's Department;

C. HUGO HOLLAND ("ADA Holland"), individually and in his official

capacity, who is a person of the full age of majority, a resident of the Western District of Louisiana, and who is employed part-time as a special prosecutor by the Bossier Parish District Attorney's Office.  At all relevant times ADA Holland was acting under the color of state law and was acting in the course and scope of his employment performing investigatory and prosecutorial functions for the Bossier Parish District Attorney's Office; and

D.     DISTRICT ATTORNEY J. SCHUYLER MARVIN ("DA Marvin"), in his official capacity as the District Attorney for the Parish of Bossier, is a person of the full age of majority and a resident of the Western District of Louisiana; and

E.     UNKNOWN BOSSIER PARISH SHERIFF DEPUTIES, JOHN AND JANE DOES 1-100, persons of the full age of majority and employed by the Bossier Parish Sheriff's Department, acting under the color of state law and in the course and scope of their employment with the Bossier Parish Sheriff's Department.

6.

Defendants, Sheriff Whittington and DA Marvin, are liable directly and vicariously for the actions complained of herein for the stated causes of action arising from the acts and omissions of Defendants Lt. Bletz, ADA Holland, and unknown Bossier Parish Sheriff Deputies John and Jane Does 1-100.  Defendants, Sheriff Whittington and DA Marvin, are also directly liable for the unconstitutional policies, practices, customs, and training of the Bossier Parish Sheriff's Office and the Bossier Parish District Attorney's Office.

## CRIMINAL PROPERTY DAMAGE
## AND TERRORIZING ACTS
## IN BOSSIER PARISH, LOUISIANA

7.

Beginning in 2010, a series of property crimes began in north Bossier Parish, Louisiana on or near Old Plain Dealing Road which resulted in damage to ATVs, deer stands, and deer camps.  All acts discussed herein occurred in this area unless specifically stated otherwise.

8.

On or about October 18, 2010, Jimmy Hope reported to the Bossier Parish Sheriff's Office ("BPSO") that he found a welded spike on a private gravel roadway believed to have caused flat tires.

9.

On or about November 26, 2010, Edgar Naron reported to BPSO that a pair of homemade spikes were in the roadway at the entrance of his deer lease and caused damage to both tires on the right side of his truck.

10.

On or about November 26, 2010, BPSO investigated reports from members of the Burnt Pine Hunting Club that metal spikes were found in the dirt driveway leading to the hunting club and there were flat tires on three different vehicles.

11.

On or about December 18, 2010, Kathy Naron found two spikes on an access road near Will Road and Old Plain Dealing Road.  She found a plaid men's shirt lying on the

ground near the spikes.  Inside the shirt was a small walkie talkie with the name "L. Burns" written on it in black marker.

12.

"L. Burns" was later identified as an individual named Landon Burns.  BPSO detectives determined that the shirt was too small for Mr. Burns and could not have belonged to him.  BPSO detectives concluded the real perpetrator(s) intentionally placed the shirt and walkie talkie to mislead them.

13.

On or about December 2, 2010, Johnnie Brunson reported a theft of a hunting camera and advised BPSO detectives that others in his hunting club had found spikes in the roadway.

14.

On or about December 21, 2010, Jimmy Hope found two homemade spikes on Peace Lane.

15.

On or about January 8, 2011, George Boyd reported to BPSO that he had a flat tire and found two homemade spikes.  Mr. Boyd also found "Fuck You" scratched into the dirt with a tree limb.

16.

On or about January 24, 2011, Jimmy Hope turned over to BPSO another spike he found behind his residence close to the river after his daughter had flat tires on her ATV.

17.

On or about June 3, 2011, Tammy Brunson received an anonymous phone call from a female caller who stated she needed to "clear her conscience."  The caller stated she was looking for Bubba Naron to tell him that his green camp house on Highway 160 had been destroyed.  Mrs. Brunson advised that the only green camp house on Highway 160 belonged to her and her husband.  The caller stated that she was with Gregory Bickham when he vandalized the camp house and that Bickham hid the stolen items under his trailer. BPSO accompanied the Brunson's to their camp house.  Upon arrival, they found items on the roadway that came from the camp house and found the camp house in disarray and vandalized, including but not limited to a carving in the front door stating: "Fuck with me and I'll fuck with you"; "Back off" written on the TV; "Proverbs 9:17" written on a chip bag;" and a bottle of lighter fluid left upside down over a roll of toilet paper.  Morris Naron and Stephen Adams, who had campers at the same site, also reported entry and theft.  No fingerprints were found.

18.

BPSO detectives learned that the anonymous call to Tammie Brunson came from a pay phone at the corner of Benton Road and East Texas Street in Bossier City, Louisiana.

19.

BPSO detectives obtained a search warrant for Gregory Bickham's residence.  None of the stolen items were found and Bickham denied any involvement.  Cell phone records later confirmed that Bickham was in East Texas at the time of the burglaries.

20.

BPSO detectives concluded that the real perpetrator(s) named Gregory Bickham in another effort to mislead them.

21.

On or about August 22, 2011, Edgar Naron reported two tires damaged as a result of homemade spikes placed at his deer lease.

22.

On or about September 11, 2011, Stephen Adams reported to BPSO that he found a cell phone box suspended 10-12 feet in the air at his hunting lease.  Inside the box he found a plastic baby doll with "cry baby," "kiss my ass," and "Mark 13:35" written on it.  BPSO detectives determined that the cell phone box originated with a cell phone account registered to Billy Joe Fletcher who has three (3) daughters.

23.

On or about September 28, 2011, Sonny Bickham reported to BPSO that he received a threatening letter which read: "Keep that bitch off my lease I can get to your cows just as easy.  Keep the bitch off my lease."

24.

On or about March 24, 2012, BPSO deputies were dispatched to the 100 block of Highway 160 where they found several spikes on a roadway and found four deer camp trailers destroyed by fire.  The victims, Johnnie Brunson, Stephen Adams, Morris Naron, and Curtis Southern, blamed Hunter Burns, Landon Burns, and Jessica Bickham because they had been seen riding four-wheelers on the property.

25.

On or about October 17, 2012, Gary Wilson reported to BPSO that his deer camp had been burned down.

26.

On or about October 27, 2017, Chad Johnson reported that his deer stand had been burned down and that a deer camera and metal box was missing.  Mr. Johnson advised that Landon Burns had been seen on his property riding ATVs.  Deputies located the deer camera and metal box on the property that had been destroyed, and then located a small green Coleman fuel bottle with the name "Todd Phillips" written on it in black marker.

27.

On or about November 12, 2012, Gary Wilson reported that his deer stand and game camera had been burned and Matthew Casten reported that his deer stand had been burned. A GPS tracker was also stolen from Casten's deer stand and later found in the bed of Dale Russell's truck.  BPSO detectives found a type of incendiary device in a third deer stand on the property owned by Otis Smalley that had not burned.  The device was made of an empty Powerade bottle, red diesel grade fuel, a cardboard roll from toilet paper, and a bute syringe that had been prescribed for one of the Phillips' horses.  Next to the device was a trash bag which contained a Styrofoam cup with the name "Karen" written on it in with an ink pen.

28.

BPSO detectives obtained a search warrant to search the Phillips property and outside buildings.  Jodi Phillips also consented to a search of their residence.  BPSO

detectives searched the residence and two barns located on the property and found nothing to connect any member of the Phillips family to the property crimes.

29.

During interviews with the BPSO detectives, Abby Phillips advised that the bute syringe was used for her horse and had been discarded after use.  Todd and Jodi Phillips also advised that they recognized the "Karen" cup as one used by their friend, Karen Sherratt, who had been visiting the week prior with her husband and informed detectives that the items at issue had been placed in their trash at the end of their driveway along Old Plain Dealing Road.  The trash bins placed at the end of the driveway are approximately 0.3 miles from the residence and cannot be viewed from the residence due to the heavily wooded area.

30.

In the days following the search warrant, Todd, Jodi, Brooke and Abby voluntarily submitted fingerprints, but no fingerprints of any member of the Phillips family were ever matched to the property crimes.

31.

Todd Phillips also voluntarily gave a DNA sample and a handwriting exemplar, but his DNA was never matched to any of the property crimes and his handwriting was never matched to any writings at issue in the BPSO's investigation of the property crimes.

32.

On or about December 13, 2012, Bossier Crime Stoppers received an anonymous phone call identifying Blake Barton as the person responsible for all property crimes

occurring in north Bossier Parish.  The caller advised officers to look for a hole near a pine tree behind Barton's residence.

33.

BPSO detectives responded to Barton's residence and found the hole identified by the caller.  Inside the hole covered by leaves was a camouflage fanny pack with tire spikes, a torch, the bezel end of a blue flashlight, and a black trash bag containing household trash items and a magazine with a subscription label for Jodi Phillips.

34.

On or about December 15, 2012, Jimmy Hope reported a flat tire after running over a homemade iron spike on a dirt road leading to his deer lease.  On that same day, Gary Wilson gave BPSO deputies a Propel Zero water bottle and one part of a blue flashlight found in a tree next to his deer lease.

35.

Blake Barton denied any knowledge about the items found on his property and BPSO detectives concluded that the items were intentionally placed on Barton's property in another effort to mislead the detectives.  Per Lt. Bletz's report: "This entire incident was carefully orchestrated and very obviously another attempt by the real suspect to mislead sheriff's department investigators and divert our attention from him.  The individual who made the initial crime stoppers tip gave such detailed information about the location of the incriminating evidence that they had to have put the evidence at the base of the tree themselves and/or have been standing there as someone else buried the evidence behind the tree."

36.

On or about December 19, 2012, Jesse Williams and Gary Wilson reported flat tires on their ATVs after running over spike strips while hunting.

37.

On or about December 24, 2012, Blake Barton's father, Charles Everett, received a call from an unknown male saying his son better sell his trailer or it would be burned down. The caller also stated that Barton was trying to set up Todd Phillips.  The call was traced to a pay phone at a Circle K at the corner of Airline Road and Shed Road.

38.

On or about February 5, 2013, John Greer received a letter with intentionally disguised handwriting with a newspaper clipping, a bible verse, and a set of GPS coordinates referring to the back left corner of Blake Barton's residence.

39.

On or about March 29, 2013, John Greer report a toilet bowl left in his driveway with the following written on it: "2 John 1:12" and "Bletz Career."

40.

On or about May 20, 2013, BPSO received a call about graffiti on railroad crossing signs at the Alden Bridge Loop North.  When BPSO detectives arrived, they observed red paint in the shape of a body painted on the railroad crossing with "Bletz Gossip" written at the feet.

41.

On or about June 19, 2013, Gary Wilson reported a flat tire on his truck after running

over a metal spike in the woods behind his residence.

42.

On or about June 12, 2013, a BPSO deputy got two flat tires while checking trail cameras placed by them in hopes of identifying a suspect and discovered that two of three cameras had been destroyed.

43.

On or about June 20, 2013, Matthew Casten reported two flat tires on his truck after running over spikes when he was leaving the Burnt Pine Hunting Club.

44.

On or about June 24, 2013, Gary Wilson contacted Lt. Bletz and reported finding more metal spikes and a clear plastic bottle hanging from a nearby tree with a paper inside saying: "Never Say I Can't Go On Any Longer!"

45.

On or about August 25, 2013, Edgar Naron reported two flat tires on his ATV after running over spikes on his deer lease.

46.

On or about August 31, 2013, Dustin Williams reported flat tires on his tractor after running over homemade spikes sticking out of the ground and reported a 10-foot tripod deer stand had been stolen.

47.

On or about August 31, 2013, Michael Payne reported a flat tire on his ATV after running over a metal spike.

48.

On or about September 6, 2013, BPSO detectives retrieved a letter that was mailed to John Greer and identified "W. Cottage Grove Church Loop."  When BPSO detectives arrived, they found a toilet tank top at the edge of a dirt grave with "Bletz a/k/a Inspector Clouseau Wearried Himself to Death" and a black dancing monkey drawn on the toilet.

49.

On or about September 12, 2013, Brett Hendrick reported two flat tires after running over spikes.

50.

On or about September 13, 2013, Dustin Hendrick reported damage to his truck and ATV by two different metal spikes on the Alden Bridge Loop Hunting Lease.

51.

On or about October 24, 2013, Carlos Zamora and Albert Smith reported flat tires on their ATVs.

52.

On or about October 27, 2013, Carlos Zamora reported flat tires on his ATV after driving over spikes.

53.

On or about November 15, 2013, Jimmy Hope reported flat tires on his ATVs caused by spikes pushed into the ground at his lease.

54.

On or about March 10, 2014, Jimmy Hope reported a flat tire.  He found a metal

spike and a plastic bottle nearby with a message written inside: "Call Detective Clouseau ***-****."

### 55.

On or about April 4, 2014, Jared Rider reported that he stepped on a metal spike on his deer lease.

### 56.

On or about July 7, 2014, Sonny Bickham received a letter stating: "We know your son is helping Phillips and you know it two chief no hair will not get off his ass to do anything so I will I have always hated you anyway you and your son are going to hell and I'm going to send y'all there" (sic).

### 57.

On or about August 16, 2014, Robert Gilbert reported flat tires after running over spikes.

### 58.

On or about August 24, 2014, Robert Heins reported flat tires on his ATV after running over tire spikes.

### 59.

On or about September 18, 2014, Ross Brown, Craig Eizel, and Justin Smith reported flat tires on their ATVs and a tractor after running over spikes.

### 60.

On or about September 27, 2014, BPSO detectives received a report that Ralph Wallace had two flat tires on his ATV and Albert Smith's deer stand had been burned.

61.

On or about November 12, 2014, Robert Gilbert reported a flat tire on his truck after running over a metal spike.

62.

On or about November 25, 2014, Michael Deville reported flat tires on his truck after running over a metal spike on the shoulder of Alden Bridge Loop on the south end of Highway 3.

63.

On or about November 29, 2014, Edgar Naron reported flat tires on his ATV after running over a spike on a trail near his deer stand.

64.

On or about December 3, 2014, Robert Gilbert reported a flat tire on his ATV after running over a tire spike on his hunting lease.

65.

On or about January 2, 2015, Alfred "Breck" Bickham, a Shreveport Police Captain, reported spikes made from crushed beer cans with nails and tacks driven through them placed along his driveway.  Cans had "talk talk talk" written in black marker.  Bickham informed BPSO detectives that he believed the Naron's were responsible.

66.

On or about July 2, 2015, Jimmy Hope and Gary Wilson reported flat tires after running over a spike.

67.

On or about August 31, 2015, Michael Reese Jackson reported running over spikes and damaging two ATV days the previous day.

68.

On or about September 2, 2015, John Hardy reported two flat tires after running over a spike embedded in the roadway at W&L Hunting Club on Rocky Mount Road.

69.

On or about September 3, 2015, Dustin Digilormo and Richard Griffing reported flat tires on a truck and ATV after running over a metal spike.

70.

On or about September 26, 2015, Andy Ward reported a flat tire after running over a spike on his leased property.

71.

On or about October 7, 2015, Michael DeVille reported finding a spike on a gravel road where he normally parks to go to his deer lease.

72.

On or about October 9, 2015, William Burson reported flat tires on his truck after running over a spike and found a small green canister hanging by green string on a brush next to the gate with coordinates and dates written on a piece of paper inside.

73.

On or about October 17, 2015, Chad Johnston reported flat tires caused by spikes. Deputies also located loose paper with religious writings as well as a soda can near the

area.

74.

On or about October 28, 2015, Richard Talbert reported flat tires on his vehicle after running over spikes on Cottage Grove Road.

75.

On or about October 28, 2015, Robert Williams reported a flat tire on his truck caused by a spike.

76.

In November 2015, Gary Wilson reported that his home was vandalized while he was out of town.  BPSO detectives discovered that Wilson's walls had been broken through with an axe and his furniture and other personal belongings destroyed.

77.

In December 2015, Dr. and Mrs. Bobby Hewlett, who resided in the 1200 block of Old Plain Dealing Road, were awoken from their sleep when an explosive device set off that had been placed beneath the main bedroom of their pier-and-beam house.  Douglas Holley, who lived at the Hewlett's horse farm in a separate residence, was arrested several days later and charged with two counts of attempted first-degree murder and one count of manufacturing a bomb.

78.

Despite the proximity of the Hewlett bombing to the other property crimes and the use of an explosive device, BPSO detectives and ADA Holland refused to investigate whether Douglas Holley was responsible for or connected to the other property crimes.

79.

In November 2016, Gary Wilson reported that his secondary residence had been burned down.

80.

Multiple other incidents of tire spikings, vandalism, arson, and other property damage have occurred in north Bossier Parish since at least 2010 that have not been reported to the Bossier Parish Sheriff's Office.

81.

Upon information and belief, other incidents of tire spikings, vandalism, arson, and other property damage have also occurred in north Bossier Parish since at least 2010 that have been reported to the Bossier Parish Sheriff's Office but that Plaintiffs do not have knowledge of at the time of this filing.

82.

Additionally, multiple writings similar in nature to the writings described hereinabove have been sent to various persons in Bossier and Caddo Parishes which reference the property crimes and/or the investigation of the Bossier Parish Sheriff's Office.

83.

As of the fall of 2017, BPSO deputies, at the direction of Sheriff Whittington, have an open and ongoing investigation into the various property crimes discussed herein as well as the multiple writings referencing the property crimes and/or the investigation of the Bossier Parish Sheriff's Office.  Upon information and belief, a special unit led by Duane

Huddleston and other unknown BPSO detectives has been assigned by Sheriff Whittington to investigate these crimes and to identify and arrest the perpetrators.

## INVESTIGATION AND PROSECUTION
## OF TODD PHILLIPS

### 84.

In July 2012, Julian Whittington was sworn in as Sheriff of Bossier Parish.  Sheriff Whittington received multiple complaints from the residents in north Bossier Parish, many of whom he knew personally, concerning the above-described offenses and was under pressure to arrest a suspect.

### 85.

Shortly after he took office, Sheriff Whittington appointed Lt. Bletz as the lead investigator for the north Bossier Parish property crimes described hereinabove.  Lt. Bletz was instructed by Sheriff Whittington to identify and arrest a suspect.

### 86.

Lt. Bletz was aware from reading prior reports and discussing the case with other deputies that the perpetrator(s) had made multiple attempts to mislead and taunt detectives by attempting to direct the detectives' attention to certain individuals.

### 87.

In October 2012, Lt. Bletz and other BPSO detectives learned of the Phillips family for the first time when the name "Todd Phillips" was written in black marker on a green Coleman fuel bottle.

88.

The green Coleman fuel bottle found in October 2012 can be purchased at any hardware or sporting goods store and is an item commonly used by hunters and woodsmen.

89.

The only other items found by BPSO detectives that were connected to the Phillips family were items that had been discarded in the trash and placed in a trash can along Old Plain Dealing Road approximately 0.3 miles from their residence.

90.

In November 2012, BPSO detectives obtained a search warrant for the Phillips property.  Like the other residences that had been searched during the course of BPSO's investigation, nothing of evidentiary value was found—no stolen items were found, no spikes or materials used to make spikes were found, no welding machinery was found, no other items related to the above-described offenses were found.

91.

After BPSO detectives searched their residence, Jodi, Brooke and Abby voluntarily submitted fingerprints and Todd voluntarily submitted fingerprints and gave a DNA sample.

92.

BPSO detectives never identified any fingerprints of any member of the Phillips family on any item or at any scene of the above-described offenses.

93.

BPSO detectives never matched the DNA of Mr. Phillips to any item found or at

any scene of the above-described offenses.

94.

Mr. Phillips also voluntarily gave a handwriting exemplar to BPSO.

95.

Mr. Phillips' handwriting was never matched to any writings at issue in or connected to the BPSO's investigation of the property crimes.

96.

No witness ever identified any member of the Phillips family at any scene of the above-described property crimes nor has any witness seen any member of the Phillips family at or near any of the hunting leases where the property damage occurred.

97.

On August 7, 2012, Todd Phillips was promoted to Vice-President/General Manager of Frymaster Corporation.  Although Mr. Phillips' principal office is located in Shreveport, Louisiana, Frymaster services food-chains across the world thus requiring Mr. Phillips to travel across the United States and to foreign countries on a regular basis.  In September and October 2012, he traveled to Chicago, Illinois twice and to Seoul, Korea once.  Additionally, during this same time period, the youngest Phillips daughter, Abby, began high-school rodeo and the Phillips family attended rodeo events at least two weekends per month.

98.

Despite finding no evidence at the Phillips residence connecting any member of the Phillips family to the above-described offenses, and without identifying any opportunity or

motive, Sheriff Whittington, Lt. Bletz and other BPSO detectives were unable to withstand the public's scrutiny for their failure to identify a suspect and began reporting to members of the community that Todd Phillips was a suspect.  For nearly three years, they reported to the community on a regular basis that Todd Phillips was guilty and that an arrest was imminent.  Most of the victims of the above-described offenses had never met or even heard of Todd Phillips but became outraged and began making threatening remarks in public and on social media towards Mr. Phillips and his family based on the accusations of Sheriff Whittington, Lt. Bletz, and other BPSO deputies.

99.

Sheriff Whittington, Lt. Bletz and other BPSO detectives acted with deliberate indifference to the rights of Mr. Phillips and, without justification, disregarded the evidence placed at various scenes identifying suspects other than Mr. Phillips, disregarded the evidence indicating that at least one female was involved based on the anonymous calls, and disregarded their own conclusions that the real perpetrator(s) were intentionally misleading and taunting detectives.

100.

The statements of Sheriff Whittington, Lt. Bletz and other BPSO deputies to members of the community identifying Mr. Phillips as a suspect caused Mr. Phillips, his wife, Jodi, and daughters, Brooke and Abby, to suffer severe emotional distress, fear, and humiliation.

101.

In March 2013, Lt. Bletz and other BPSO deputies, after consultation with ADA

Holland and Sheriff Whittington, made three signs with the same type of writing used on the other writings sent to members of the community and referenced a different Bible verse on each sign.   Lt. Bletz and other BPSO deputies placed one sign directly across the highway from the Phillips' driveway and strategically placed the other two signs along Old Plain Dealing Highway so that the Phillips would see the signs on their way home.

102.

Jodi Phillips and Abby Phillips saw the signs while coming home from the rodeo on a Friday evening while Todd Phillips was in China on behalf of Frymaster.   Aware that the writings were believed to be connected to the various property damage crimes, Jodi and Abby became fearful for their lives.   Jodi Phillips called their friend, John Greer, who came to their home and called BPSO.   When BPSO deputies arrived, they did not advise Mrs. Phillips that the signs had been placed by them and allowed Mrs. Phillips and Abby to remain in fear.   As a result, Mrs. Phillips and Abby spent the night at the home of Mr. Greer and his wife until Mr. Greer was able to accompany them home the next day during daylight hours and check the premises to ensure the Phillips were not in any danger.

103.

Sheriff Whittington, Lt. Bletz, ADA Holland, and other BPSO deputies intentionally and/or negligently placed the signs in front of the Phillips residence to incite fear and cause extreme emotional distress to the members of the Phillips family.

104.

Lt. Bletz later testified in the 26th Judicial District Court, Bossier Parish, Louisiana, during the week of November 28, 2016, wherein he admitted for the first time that the signs

were placed by him and other Bossier Parish deputies and that the signs were placed in an effort to "communicate" with Mr. Phillips, whom he believed to be responsible for the various property crimes, despite knowing that Mr. Phillips had retained counsel and had twice given statements voluntarily at Lt. Bletz's request.

105.

After the fall of 2012, no item connected to any member of the Phillips family was found at any scene of the above-described property crimes but the offenses continued, and are continuing, to occur.

106.

Sheriff Whittington, Lt. Bletz and other BPSO detectives ignored the obvious pattern by the real perpetrator(s) of intentionally placing items at the scene of the property damage to mislead the investigators and continued to report to members of the community that Mr. Phillips was responsible for all acts of property damage that had occurred in north Bossier Parish as described hereinabove.

107.

After Sonny Bickham received a threatening letter in July 2014 referencing Mr. Phillips, the Phillips's fear increased.  Sheriff Whittington, Lt. Bletz, and other BPSO deputies acted with deliberate indifference and failed to thoroughly investigate the threats and investigate suspects other than Mr. Phillips.  Their failure to investigate and their repeated disparaging remarks about Mr. Phillips, which incited angst and outrage by other members of the community, caused the Phillips to move from Benton, Bossier Parish, Louisiana to Marshall, Harrison County, Texas.  Todd and Jodi Phillips owned two (2)

homes for approximately nine (9) months, and Abby Phillips was forced to travel back and forth from her home in Marshall, Texas to Benton High School in Benton, Louisiana during her senior year of high school in the fall of 2014 before graduating early in December 2014.

108.

On June 21, 2015, without probable cause, the Bossier Parish Sheriff's Office issued a citation to Todd Phillips for the misdemeanor offense of criminal property damage in violation of La. R.S. 14:56.

109.

Thereafter, ADA Holland, acting as a Special Prosecutor for the Bossier Parish District Attorney's Office, and DA Marvin, filed a Bill of Information in the 26th Judicial District Court, Bossier Parish, Louisiana, Docket No. 259,152 ("the criminal proceeding"), charging Mr. Phillips with one count of simple criminal damage to property in violation of La. R.S. 14:56.   The Bill of Information stated that, "during March of 2014," he "intentionally damaged the property of Jimmy Hope and Gary Wilson, to-wit, ATV tires, without permission of Jimmy Hope and Gary Wilson, by means of hidden fabricated metal tire spikes, wherein the damage amounted to less than $500" ("the misdemeanor offense"). The prosecution was initiated by the Bossier Parish District Attorney's Office without probable cause.

110.

There was no evidence connecting Mr. Phillips to the misdemeanor offense.

111.

ADA Holland filed a 404(B) Notice in the criminal proceeding identifying

approximately sixty (60) other crimes the State sought to introduce at the misdemeanor trial.  Mr. Phillips, through counsel, filed a motion to exclude all evidence of "other crimes."

112.

ADA Holland proposed a plea agreement to Mr. Phillips whereby Mr. Phillips would plead guilty to one misdemeanor count of simple criminal damage to property and pay restitution in the amount of $59,578.00.  ADA Holland threatened Mr. Phillips, through his counsel, that if Mr. Phillips rejected the plea offer that he would bring additional charges against Mr. Phillips for each "other crime" and would keep Mr. Phillips tied up in litigation for years.

113.

On or about November 26, 2016, KTBS 3 News reported on the story and aired for the first time a recorded statement of ADA Holland wherein he stated: "Not a single person is gonna tie Todd Phillips to the property damage."  ADA Holland also stated his intent to file more charges against Mr. Phillips if he did not accept the plea offer.

114.

A 404(b)-hearing commenced in the criminal proceeding on November 28, 2016 and lasted four and one-half days.  On the first day, Lt. Bletz testified: "We have no witnesses whatsoever who saw Todd Phillips at or near any of these properties at or near any of the times we think these spikes got put down."

115.

On May 17, 2017, Judge Jeff Thompson issued a written ruling in the criminal

proceeding finding that five of the alleged "other crimes" were admissible at the misdemeanor trial, while all others were ruled inadmissible.  On July 14, 2017, Mr. Phillips, through counsel, filed an Application for Writ of Supervisory Review with the Louisiana Court of Appeals for the Second Circuit, but the Second Circuit denied the Application on August 17, 2017 on grounds that it is "[t]he general policy of [the Second Circuit] to grant supervisory review of matters arising from misdemeanor prosecutions only after conviction and sentence."

116.

Subsequently, acting in an investigatory capacity, ADA Holland prepared and signed an affidavit seeking an arrest warrant for Mr. Phillips for the felony offense of simple arson with damage over $500 in violation of La. R.S. 14:52.   On August 29, 2017, at the direction of ADA Holland, an Amended Bill of Information was filed in the criminal proceeding dismissing the misdemeanor offense and formally charging Mr. Phillips with the felony  offense of simple arson with damage over $500 in violation of La. R.S. 14:52 ("the felony offense").

117.

On August 31, 2017, Mr. Phillips was required to turn himself in at the Bossier Parish Maximum Security facility.  He was booked on the felony offense and required to post a one thousand and no/100 ($1,000.00) dollars cash bond.

118.

The arrest of Mr. Phillips on the felony offense, nearly five years after the alleged offense, is not supported by probable cause and is an intentional and malicious act by

Sheriff Whittington, Lt. Bletz, ADA Holland, and other BPSO deputies to continue to cause Mr. Phillips undue embarrassment and humiliation and to force Mr. Phillips into paying restitution to the victims of the above-described property damage crimes.  At all times relevant hereto, Sheriff Whittington, Lt. Bletz, ADA Holland, and other BPSO deputies acted with deliberate indifferences to the rights of Mr. Phillips and the other members of his family.

119.

On November 28, 2017, Mr. Phillips appeared with counsel in the 26th Judicial District Court in Benton, Louisiana for arraignment, at which time the Bossier Parish District Attorney's Office set the matter for trial on January 22, 2018 over the objection of Mr. Phillips' defense counsel.

120.

The setting of a trial date by the Bossier Parish District Attorney's Office, without affording Mr. Phillips the opportunity for a preliminary examination if so desired, without an opportunity to conduct discovery related to the felony offense, without an opportunity to file and have motions heard prior to trial, and without opportunity to exercise other rights afforded defendants under the United States and Louisiana constitutions and Louisiana statutory laws, is an abuse of process and is an action taken with deliberate indifference to the rights of Mr. Phillips.

**CLAIM I: 42 U.S.C. § 1983—PRELIMINARY AND PERMANENT INJUNCTION**

121.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-120 as though fully

pled and stated herein.

122.

This is an action against Sheriff Whittington, Lt. Bletz, ADA Holland, DA Marvin, and unknown BPSO deputies for the deprivation of Todd Phillips' Fourth, Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

123.

At all relevant times hereto, Sheriff Whittington, Lt. Bletz, ADA Holland, DA Marvin and unknown BPSO deputies were acting under the color of state law.  Further, Sheriff Whittington, Lt. Bletz, and unknown BPSO deputies were acting pursuant to the policies and customs of the Bossier Parish Sheriff's Office, and ADA Holland and DA Marvin were acting pursuant to the policies and customs of the Bossier Parish District Attorney's Office.

124.

The arrest and prosecution of Mr. Phillips were initiated without probable cause. Defendants knew or reasonably should have known that no probable cause existed to support the charges brought against him but they intentionally and maliciously pursued prosecution on the false charges against Mr. Phillips.  The arrest and prosecution of Mr. Phillips was initiated in bad faith, as Defendants knew there was no evidence sufficient to create probable cause that Mr. Phillips had committed that charged offense(s), and/or Defendants caused charges to be brought against Mr. Phillips for purposes of harassment.

125.

ADA Holland and DA Marvin are pursing the felony prosecution of Mr. Phillips in

bad faith by seeking to deny him all rights and opportunities afforded defendants under the United States and Louisiana Constitutions and Louisiana statutory laws.

126.

Sheriff Whittington, Lt. Bletz, ADA Holland, DA Marvin, and unknown BPSO deputies, through the actions described hereinabove, have deprived Todd Phillips of his rights, privileges, and immunities secured by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, including but not limited to the right to be free from unreasonable and unlawful seizures of his person and the right to be free from bad faith prosecutions.

127.

As a direct and proximate, foreseeable result of the violations of Mr. Phillip's constitutional rights, including the rights guaranteed him by the Fourth, Fifth, and Fourteenth Amendments, and the misconduct of Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, as set forth hereinabove, Todd Phillips has suffered and will continue to suffer irreparable harm absent this Honorable Court's intervention.

WHEREFORE, Plaintiff Todd Phillips seeks the issuance of a preliminary and permanent injunction, enjoining Defendants, their agents, officials, employees, assigns, and all persons active in concert or participation with them, or any of them, from continuing their bad faith prosecution of Mr. Phillips in the 26th Judicial District Court, Bossier Parish, Louisiana.

**CLAIM II: VIOLATION OF 42 U.S.C. § 1983—FALSE ARREST**

128.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-127 as though fully pled and stated herein.

129.

This is an action against Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies for the deprivation of Todd Phillips' Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

130.

At all relevant times hereto, Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies were acting under the color of state law.  Further, Sheriff Whittington, Lt. Bletz, and unknown BPSO deputies were acting pursuant to the policies and customs of the Bossier Parish Sheriff's Office, and ADA Holland was acting pursuant to the policies and customs of the Bossier Parish District Attorney's Office.

131.

Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, through the actions described hereinabove, deprived Todd Phillips of his rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, including the right to be free from unreasonable and unlawful seizures of his person.

132.

As a direct and proximate, foreseeable result of the violations of Mr. Phillip's constitutional rights, including the rights guaranteed him by the Fourth and Fourteenth Amendments, and the misconduct of Sheriff Whittington, Lt. Bletz, ADA Holland, and

unknown BPSO deputies, as set forth above, Todd Phillips suffered injuries, including being falsely arrested, mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

133.

As a result of his injuries, Todd Phillips is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

134.

Mr. Phillips is also seeking punitive damages because the conduct set forth above constitutes deliberate indifference, willful misconduct, and intentional and malicious conduct towards Mr. Phillips and this conduct caused substantial injury to Mr. Phillips.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants, Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, for the constitutional violations, civil rights violations, misconduct, and the malicious, intentional and negligent acts and omissions set forth herein which caused injury to Mr. Phillips, and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM III: VIOLATION OF 42 U.S.C. § 1983—FAILURE TO INTERVENE

135.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-134 as though fully pled and stated herein.

136.

At all relevant times hereto, Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies were acting under the color of state law and pursuant to the policies and customs of the Bossier Parish Sheriff's Office and the Bossier Parish District Attorney's Office.

137.

Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, through the actions described hereinabove, deprived Todd Phillips of his rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution.  The actions of Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies were undertaken intentionally, willfully, with malice, and with deliberate indifference to Todd Phillip's constitutional rights.

138.

Throughout the entire investigation by the Bossier Parish Sheriff's Office and the Bossier Parish District Attorney's Office of the above-described property crimes, unknown BPSO deputies had knowledge that the real perpetrator(s) were intentionally placing items at the scene of said property crimes to identify false suspect in order to mislead investigators.  The unknown BPSO deputies knew that the items connected to Mr. Phillips and his family members were placed in the same or substantially similar manner as the other false and misleading evidence and that the prosecution of Mr. Phillips was not supported by probable cause.  Throughout the investigation and prosecution of Mr. Phillips, the unknown BPSO deputies had a realistic opportunity to intervene and prevent the

deprivation of Mr. Phillips's constitutional rights but failed to do so.

139.

As a result of their failure to intervene, Mr. Phillips suffered injuries, including mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

140.

Todd Phillips is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

141.

Mr. Phillips is also seeking punitive damages because the conduct set forth above constitutes deliberate indifference, willful misconduct, and intentional and malicious conduct towards Mr. Phillips and this conduct caused substantial injury to Mr. Phillips.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants, Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, for the constitutional violations, civil rights violations, misconduct, and the malicious, intentional and negligent acts and omissions set forth herein which caused injury to Mr. Phillips, and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM IV: VIOLATION OF 42 U.S.C. § 1983— DUE PROCESS VIOLATION & EXCESSIVE PRE-ACCUSATION DELAY

### 142.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-141 as though fully pled and stated herein.

### 143.

At all relevant times hereto, Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies were acting under the color of state law.  Sheriff Whittington, Lt. Bletz, and other unknown BPSO deputies were acting pursuant to the policies and customs of the Bossier Parish Sheriff's Office.

### 144.

Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, through the actions described hereinabove, deprived Todd Phillips of his rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments of the United States Constitution.  The actions of Defendants were undertaken intentionally, willfully, with malice, and with deliberate indifference to Todd Phillip's constitutional rights.

### 145.

Defendants intentionally, maliciously, and with reckless disregard for Mr. Phillips constitutional rights delayed filing a Bill of Information against Mr. Phillips on the felony offense.  The actions of Defendants were not taken in good faith and the manner in which they have chosen to prosecute Mr. Phillips is arbitrary.

146.

As a result of the excessive delay, Mr. Phillips has been prejudiced in his ability to defend against the felony offense and has suffered injuries, including mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

147.

Todd Phillips is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

148.

Mr. Phillips is also seeking punitive damages because the conduct set forth above constitutes deliberate indifference, willful misconduct, and intentional and malicious conduct towards Mr. Phillips and this conduct caused substantial injury to Mr. Phillips.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants, Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, for the constitutional violations, civil rights violations, misconduct, and the malicious, intentional and negligent acts and omissions set forth herein which caused injury to Mr. Phillips, and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM V: VIOLATION OF 42 U.S.C. § 1983—DUE PROCESS & EQUAL PROTECTION VIOLATION

149.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-148 as though fully pled and stated herein.

150.

At all relevant times hereto, Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies were acting under the color of state law.  Sheriff Whittington, Lt. Bletz, and other unknown BPSO deputies were acting pursuant to the policies and customs of the Bossier Parish Sheriff's Office.

151.

Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, through the actions described hereinabove, deprived Todd Phillips equal protection of his rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution.

152.

Through the actions described hereinabove, Defendants have denied Mr. Phillips equal protection of the laws by failing to treat Mr. Phillips equally as all other citizens and/or "suspects" identified throughout the course of their investigation.  Defendants' actions were performed intentionally, maliciously, and with reckless disregard of Mr. Phillips constitutional rights.

153.

As a direct and proximate, foreseeable result of the violations of Mr. Phillip's constitutional rights, Todd Phillips suffered injuries, including being falsely arrested, mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

154.

Todd Phillips is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

155.

Mr. Phillips is also seeking punitive damages because the conduct set forth above constitutes deliberate indifference, willful misconduct, and intentional and malicious conduct towards Mr. Phillips and this conduct caused substantial injury to Mr. Phillips.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants, Sheriff Whittington, Lt. Bletz, ADA Holland, and unknown BPSO deputies, for the constitutional violations, civil rights violations, misconduct, and the malicious, intentional and negligent acts and omissions set forth herein which caused injury to Mr. Phillips, and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

**CLAIM VI: VIOLATION OF 42 U.S.C. § 1983—POLICY AND CUSTOM**

156.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-155 as though fully pled and stated herein.

157.

At all relevant times hereto, the employees, agents and/or deputies of the Bossier Parish Sheriff's Department, including Sheriff Whittington, Lt. Bletz, and other unknown BPSO deputies, were acting under the color of state law and pursuant to the policies and customs of the Bossier Parish Sheriff's Office.

158.

The Bossier Parish Sheriff's Office, through its agents, employees, and deputies, and through Sheriff Whittington and other policymakers and supervisors, maintained, *inter alia,* the following unconstitutional customs, practices, and/or policies:

A.    Making arrests without probable cause;

B.    Providing inadequate training regarding the facts and circumstances sufficient to establish probable cause to support a lawful arrest;

C.    Providing inadequate training regarding how to intervene to stop other deputies from making unlawful arrests;

D.    Employing and retaining as deputies' individuals, such as Lt. Bletz and unknown BPSO deputies Does 1-100, who Sheriff Whittington knew or reasonably should have known had dangerous propensities for abusing authority;

E.    Inadequately supervising, training, controlling, assigning, and disciplining BPSO deputies and other personnel, including Lt. Bletz and unknown BPSO deputies Does 1-100, who Sheriff Whittington knew or reasonably should have known had the aforementioned propensities and character traits; and/or

F.    Maintaining a policy of inaction and an attitude of indifference towards increasing numbers of arrests unsupported by probable cause, including by failing to discipline, retrain, investigate, or terminate.

159.

The Bossier Parish Sheriff's Office, through Sheriff Whittington and other policymakers, had actual or constructive knowledge of the unlawful policies, practices, and customs alleged hereinabove but nevertheless condoned, tolerated, and through its own inactions thereby ratified such policies, and such policies, practices and customs were a moving force behind the deprivation of Mr. Phillips' constitutional rights.   Sheriff Whittington and other policymakers also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Todd Phillips.

160.

As a direct and proximate, foreseeable result of the constitutional violations caused by the employees, agents, and/or officers of the Bossier Parish Sheriff's Office, Todd Phillips suffered violations of the rights guaranteed to him by the Fourth, Fifth and Fourteenth Amendments, as well as other provisions, of the United States Constitution, and Mr. Phillips suffered injuries, including being falsely arrested, mental pain and suffering,

emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

161.

As a result of his injuries, Todd Phillips is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

162.

Mr. Phillips is also seeking punitive damages because the conduct set forth above constitutes deliberate indifference, willful misconduct, and intentional and malicious conduct towards Mr. Phillips and this conduct caused substantial injury to Mr. Phillips.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendant, Sheriff Whittington, for the constitutional violations, civil rights violations, misconduct, and the malicious, intentional and negligent acts and omissions set forth herein which caused injury to Mr. Phillips, and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM VII: VIOLATION OF 42 U.S.C. § 1983—POLICY AND CUSTOM

163.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-162 as though fully pled and stated herein.

164.

At all relevant times hereto, the employees, agents and/or deputies of the Bossier

Parish District Attorney's Office, including but not limited to ADA Holland, were acting under the color of state law and pursuant to the policies and customs of the Bossier Parish District Attorney's Office.

165.

The Bossier Parish District Attorney's Office, through its agents and employees, and through ADA Holland, DA Marvin and other policymakers and supervisors, maintained, *inter alia,* the following unconstitutional customs, practices, and/or policies:

A.  Initiating prosecutions without probable cause;

B.  Providing inadequate training to its assistant district attorneys and special prosecutors regarding the facts and circumstances necessary to establish probable cause to support the commencement of a prosecution;

C.  Employing and retaining as assistant district attorneys or special prosecutors, such as ADA Holland, who DA Marvin knew or reasonably should have known had dangerous propensities for abusing authority;

D.  Inadequately supervising, training, controlling, assigning, and disciplining assistant district attorneys and special prosecutors, including ADA Holland, who DA Marvin knew or reasonably should have known had the aforementioned propensities and character traits; and/or

E.  Maintaining a policy of inaction and an attitude of indifference towards increasing numbers of prosecutions unsupported by probable cause, including by failing to discipline, retrain, investigate, or terminate.

166.

The Bossier Parish District Attorney's Office, through DA Marvin and other policymakers, had actual or constructive knowledge of the unlawful policies, practices, and customs alleged hereinabove but nevertheless condoned, tolerated, and through its own inactions thereby ratified such policies, and such policies, practices and customs were a moving force behind the deprivation of Mr. Phillips' constitutional rights.  DA Marvin and other policymakers also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Todd Phillips.

167.

As a direct and proximate, foreseeable result of the constitutional violations caused by the employees, agents, and/or officers of the Bossier Parish District Attorney's Office, Todd Phillips suffered violations of the rights guaranteed to him by the Fourth, Fifth and Fourteenth Amendments, as well as other provisions, of the United States Constitution, and Mr. Phillips suffered injuries, including being falsely arrested, mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

168.

As a result of his injuries, Todd Phillips is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

169.

Mr. Phillips is also seeking punitive damages because the conduct set forth above constitutes deliberate indifference, willful misconduct, and intentional and malicious conduct towards Mr. Phillips and this conduct caused substantial injury to Mr. Phillips.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendant, DA Marvin, for the constitutional violations, civil rights violations, misconduct, and the malicious, intentional and negligent acts and omissions set forth herein which caused injury to Mr. Phillips, and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM VIII:  LOUISIANA STATE LAW CLAIM—FALSE ARREST

170.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-169 as though fully pled and stated herein.

171.

Todd Phillips was arrested and/or detained against his will without proper legal authority, legal justification, or probable cause.

172.

The actions of Defendants, including Sheriff Whittington, Lt. Bletz, ADA Holland, and other unknown BPSO deputies, which were performed intentionally, maliciously, willfully, deliberately, carelessly, and/or recklessly, resulted in the false arrest of Mr. Phillips.

173.

As a direct and proximate, foreseeable result of the Defendants' actions and omissions, Mr. Phillips suffered injuries, including being falsely arrested, mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM IX: LOUISIANA STATE LAW CLAIM—FAILURE TO INTERVENE

174.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-173 as though fully pled and stated herein.

175.

Todd Phillips was arrested and/or detained against his will without proper legal authority, legal justification, or probable cause, and has been and is being prosecuted without probable cause for the charge(s) against him, and the employees, agents, and officers of the Bossier Parish Sheriff's Office and Bossier Parish District Attorney's Office who knew or reasonably should have known that such arrest and prosecution lacked probable caused failed to intervene.

176.

The actions of Defendants, including their employees, agents, and officers, were

performed intentionally, maliciously, willfully, deliberately, carelessly, and/or recklessly.

177.

As a direct and proximate, foreseeable result of the Defendants' actions and omissions, Mr. Phillips suffered injuries, including being falsely arrested, mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM X: LOUISIANA STATE LAW CLAIM—MALICIOUS PROSECUTION

178.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-177 as though fully pled and stated herein.

179.

Defendants, Lt. Bletz, ADA Holland, and unknown BPSO deputies, and Sheriff Whittington and DA Marvin, as well as their agents, servants, and employees to which they are vicariously liable, caused Todd Phillips to be arrested and charged with crimes that he did not commit and have attempted to coerce Mr. Phillips into a plea of guilty so as to cover up the unlawful acts and omissions of the Defendants set forth hereinabove.

180.

The arrest and prosecution of Mr. Phillips were initiated without probable cause.

Defendants knew or reasonably should have known that no probable cause existed to support the charges brought against him but they intentionally and maliciously pursued prosecution on the false charges against Mr. Phillips.

181.

As a direct and proximate, foreseeable result of the Defendants' actions and omissions, Mr. Phillips suffered injuries, including mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants, for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

### CLAIM XI: LOUISIANA STATE LAW CLAIM—ABUSE OF PROCESS

182.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-181 as though fully pled and stated herein.

183.

Defendants, Lt. Bletz, ADA Holland, and unknown BPSO deputies, and Sheriff Whittington and DA Marvin, as well as their agents, servants, and employees to which they are vicariously liable, caused Todd Phillips to be arrested and charged with crimes that he did not commit and have attempted to coerce Mr. Phillips into a plea of guilty so as to cover up the unlawful acts and omissions of the Defendants set forth hereinabove.

184.

The arrest and prosecution of Mr. Phillips were initiated without probable cause. Defendants knew that no probable cause existed to support the charges brought against him but they intentionally and maliciously pursued prosecution on the false charges against Mr. Phillips.

185.

Defendants acted with an ulterior purpose not in the regular prosecution of the criminal proceeding.

186.

As a direct and proximate, foreseeable result of the Defendants' actions and omissions, Mr. Phillips suffered injuries, including mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants, for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM XII: LOUISIANA STATE LAW CLAIM—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

187.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-186 as though fully pled and stated herein.

188.

The extreme and outrageous conduct of Defendants, as set forth hereinabove and further to be shown at trial, caused Todd Phillips, Jodi Phillips, Brooke Phillips, and Abby Phillips to suffer severe emotional distress.

189.

As a direct and proximate, foreseeable result of the Defendants' egregious actions and omissions, Todd Phillips, Jodi Phillips, Brooke Phillips, and Abby Phillips suffered injuries, including mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against Mr. Phillips.

WHEREFORE, Plaintiffs seek judgment for damages against Defendants for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM XIII: LOUISIANA STATE LAW CLAIM—CIVIL CONSPIRACY

190.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-189 as though fully pled and stated herein.

191.

Sheriff Whittington, Lt. Bletz, ADA Holland, and other unknown BPSO deputies conspired with malicious intent to perpetrate tortious acts or conduct on, or towards Mr. Phillips, including falsely arresting him, maliciously prosecuting him, intentionally causing him to suffer severe emotional distress, and other acts to be shown at trial.

192.

An understanding and agreement was made by and between Defendants to falsely arrest him and maliciously prosecute him with criminal charges.

193.

As a direct and proximate, foreseeable result of the Defendants' actions and omissions, Mr. Phillips suffered injuries, including being falsely arrested, mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM XIV: LOUISIANA STATE LAW CLAIM—NEGLIGENT HIRING, TRAINING AND/OR SUPERVISION

194.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-193 as though fully pled and stated herein.

195.

At all relevant times hereto, the employees, agents and/or deputies of the Bossier Parish Sheriff's Department, including Sheriff Whittington, Lt. Bletz, and other unknown BPSO deputies, were acting under the color of state law and pursuant to the policies and customs of the Bossier Parish Sheriff's Office.

196.

The Bossier Parish Sheriff's Office, through Sheriff Whittington, owed a duty to Mr. Phillips to properly screen, hire, train, supervise and control its agents, employees and deputies, including Lt. Bletz and unknown BPSO deputies John and Jane Does 1-100.

197.

Notwithstanding that duty, Sheriff Whittington breached that duty by committing one or more of the following acts or omissions:

A.   Failing to properly train and supervise deputies regarding the facts and circumstances sufficient to establish probable cause to support a lawful arrest;

B.   Failing to properly train and supervise deputies regarding how to intervene to stop other deputies from making unlawful arrests;

C.   Employing and retaining as deputies' individuals, such as Lt. Bletz and unknown BPSO deputies Does 1-100, who Sheriff Whittington knew or reasonably should have known had dangerous propensities for abusing authority;

D.   Failing to properly train, supervise, or discipline BPSO deputies and other personnel, including Lt. Bletz and unknown BPSO deputies Does 1-100, who Sheriff Whittington knew or reasonably should have known had the aforementioned propensities and character traits; and/or

F.   Other negligent acts and omissions to be shown at trial.

198.

As a direct and proximate, foreseeable result of the Defendants' actions and omissions, Mr. Phillips suffered injuries, including being falsely arrested, mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## CLAIM XV: LOUISIANA STATE LAW CLAIM—NEGLIGENT HIRING, TRAINING AND/OR SUPERVISION

199.

Plaintiff repeats and incorporates the allegations of Paragraphs 1-198 as though fully pled and stated herein.

200.

At all relevant times hereto, the employees, agents and/or deputies of the Bossier Parish District Attorney's Office, including ADA Holland, were acting under the color of state law and pursuant to the policies and customs of the Bossier Parish District Attorney's Office.

201.

The Bossier Parish District Attorney's Office, through DA Marvin, owed a duty to Mr. Phillips to properly screen, hire, train, supervise and control its agents, employees,

assistant district attorneys and special prosecutors, including ADA Holland.

202.

Notwithstanding that duty, DA Marvin breached that duty by committing one or more of the following acts or omissions:

A.   Failing to properly train and supervise assistant district attorneys and special prosecutors regarding the facts and circumstances sufficient to establish probable cause to support the initiation of a criminal prosecution;

B.   Employing and retaining as assistant district attorneys and special prosecutors individuals, such as ADA Holland, who DA Marvin knew or reasonably should have known had dangerous propensities for abusing authority;

C.   Failing to properly train, supervise, or discipline assistant district attorneys and special prosecutors individuals, such as ADA Holland, who DA Marvin knew or reasonably should have known had the aforementioned propensities and character traits; and/or

D.   Other negligent acts and omissions to be shown at trial.

203.

As a direct and proximate, foreseeable result of the Defendants' actions and omissions, Mr. Phillips suffered injuries, including being falsely arrested, mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life, as well as having to incur significant attorneys' fees to defend against the false and frivolous charges brought against him.

WHEREFORE, Plaintiff Todd Phillips seeks judgment for damages against Defendants for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS, TODD PHILLIPS, JODI PHILLIPS, BROOKE PHILLIPS, and ABBY PHILLIPS, respectfully pray:

A.      That this Honorable Court enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, employees, assigns, and all persons active in concert or participation with them, or any of them, from continuing their bad faith prosecution of Mr. Phillips in the 26th Judicial District Court, Bossier Parish, Louisiana;

B.      Compensatory damages as to all Defendants;

C.      Punitive damages as to Sheriff Whittington, Lt. Bletz, ADA Holland, and others as may be shown appropriate at trial;

D.      Attorney's fees and costs;

E.      Such other and further relief as may appear just and appropriate in the premises; and

F.      Plaintiff hereby demands a jury trial.

Respectfully submitted,

**STROUD, CARMOUCHE & BUCKLE, PLLC**

BY:   A.M. STROUD, III
       A.M. Stroud, III, Bar No. 12548
       Nichole M. Buckle, Bar No. 32113
7330 Fern Avenue, Suite 903
Shreveport, Louisiana 71105
Phone: (318) 629-0014
Fax: (318) 404-1571

**ATTORNEYS FOR PLAINTIFFS, TODD PHILLIPS, JODI PHILLIPS, BROOKE PHILLIPS, and ABBY PHILLIPS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was this date filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent electronically to all counsel of record by operation of the Court's CM/ECF system.

I further certify that a copy of the above and foregoing has this day been placed in the United State mail, with adequate postage affixed thereon, and properly addressed to:

Mr. Glenn Langley
Langley, Parks, Horton & Maxwell, LLC
401 Market Street, Suite 1100
Shreveport, LA 71101

Mr. Patrick Jackson
4442 Viking Drive, Suite 100
Bossier City, LA 71111

Signed in Shreveport, Louisiana on this 13th day of December, 2017.


     /s/ A.M. Stroud, III
            OF COUNSEL