UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| TODD PHILLIPS, ET AL. | § | CIVIL ACTION NO: 5:17-cv-01524 |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | DISTRICT JUDGE DOUGHTY |
| | § | |
| JULIAN WHITTINGTON, ET AL. | § | |
| | § | |
| Defendants | § | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR PARTIAL SUMMARY
JUDGMENT OF DEFENDANTS, HUGO HOLLAND, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY, AND J. SCHUYLER MARVIN, INDIVIDUALLYAND IN HIS
OFFICIAL CAPACITY**

Respectfully submitted,


/s/ Patrick R. Jackson
Patrick R. Jackson
La. State Bar No. 25722
Patrick R. Jackson, APLC
4442 Viking Dr., #100
Bossier City, LA  71111
Telephone:  (318) 752-3335
Facsimile:  (318) 752-3315
pjackson@bossierlawoffice.com
ATTORNEY FOR DEFENDANTS, HUGO
HOLLAND, Individually and in His Official
Capacity as Special Prosecutor for the
Bossier Parish District Attorney's Office,
and J. SCHUYLER MARVIN, Individually
and in His Official Capacity as District
Attorney for Bossier Parish

1

TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii


Memorandum ................................................................................................................2

Part One: The Federal Claims ......................................................................................2

    Claim I: False Arrest (Complaint ¶¶ 140-46) ........................................................2

    Claim III: Due Process and Excessive Pre-Accusation Delay
        (Complaint ¶¶ 140-46) ................................................................................. 6

    Claim IV: Due Process and Equal Protection (Complaint ¶¶ 161-67) ...................7

    Claim XV: *Brady* Violation (Complaint ¶¶ 218-24) .............................................9

    Claim VI: Policy and Custom (Complaint ¶¶ 175-81) .........................................11

Part Two: The State Claims .........................................................................................11

    Claim VII: False Arrest (Complaint ¶¶ 182-85) ..................................................12

    Claim IX: Malicious Prosecution (Complaint ¶¶ 190-94).....................................12

    Claim X: Abuse of Process (Complaint ¶¶ 195-200) ..........................................14

    Claim XI: Intentional Infliction of Emotional Distress
        (Complaint ¶¶ 201-03) ...............................................................................15

    Claim XII: Civil Conspiracy (Complaint ¶¶ 204-07) ..........................................17

    Claim XVI: Negligence and Negligent Infliction of Emotional
        Distress (Complaint ¶¶ 225-27) .................................................................20

    Claim XIV: Negligent Hiring, Training and/or Supervision
        (Complaint ¶¶ 204-07) ...............................................................................23

Part Three: Conclusion ...............................................................................................24


Signature Block and Certificate of Service..................................................................25

TABLE OF AUTHORITIES

<u>Cases</u>

*Allegheny Pittsburgh Coal Co. v. Commission of Webster County*,
    488 U.S. 366 (1989)...............................................................................8 n.30

*Almerico v. Dale*, 927 So.2d 586 (La. App. 5 Cir. 2006) .....................................17 n.80

*Anders v. Drain*, No. 18-cv-13942, 2019 U.S. Dist. LEXIS 60464
    (E.D. Mich. Apr. 9, 2019)........................................................................7 n.26

*Arco Oil & Gas Co. v. DeShazer*, 728 So.2d 841 (1999) ...........................................21

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................ 9-10

*Butz v. Lynch*, 721 So.2d 1171 (La. App. 1 Cir. 1998)..........................................18 n.87

*Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)............................................4 n.11

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)..............................8 n.30

*Coulon v. Endurance Risk Partners, Inc.*, 221 So.3d 809 (La. 2017) ...........................24

*Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808 (5th Cir. 2010) .......................6 n.17

*Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 U.S. Dist.
    LEXIS 126525 (E.D. La. Sept. 10, 2014)................................................18 n.87, 18

*Delcambre v. Mancuso*, 268 So.3d 325 (La. App. 3 Cir. 2019) ...........................14 n.67

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ....................................4 n.11, 4 n.13

*Deville v. Robinson*, 132 So.3d 1277 (La. App. 3 Cir. 2014)................................17 n.80

*Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005) .....................................................8 n.29

*Dyas v. Shreveport Police Dep't*, 136 So.3d 897 (La. App. 2 Cir. (2014) ....................12

*Elkhayyat v. City of Memphis*, No. 2:16-cv-02154-JTF-dkv,
    2018 U.S. Dist. LEXIS 201370, at *74 (W.D. Tenn.
    Sept. 21, 2018) ......................................................................................... 8, 8-9

*Eusant v. Unity Indus. Life Ins.*, 19 So. 554 (La. 1940).........................................13 n.58

*FCC v. Beech Communications, Inc.*, 508 U.S. 307 (1993) ...................................9 n.36

*Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 943 (6th Cir. 2004) .........................9 n.34, 9 n.36

*Fletcher v. Wendelta, Inc.*, 999 So.2d 1223 (La. App. 2 Cir. 2009) ....................................17 n.80

*Hand v. Gary*, 838 F. 2d 1420 (5th Cir. 1988) .........................................................................4 n.13

*Hawkins v. Town of Shaw*, 303 F. Supp. 1162 (N.D. Miss. 1969) .........................................8 n.31

*Hawkins v. Town of Shaw*, 437 F. 2d 1286 (5th Cir. 1972) .....................................................8 n.31

*Hibernia Nat'l Bank v. Bolleter*, 390 So.2d 842 (La. 1980) ................................................13 n.58

*Hoffman v. Bailey*, No. 13-5153, 2017 U.S. Dist. LEXIS 63321
   (E.D. La. 2017) .............................................................................................................13 n.58

*Holmes v. Lea*, 250 So.3d 1004 (La. App. 1 Cir. 2018) ........................................................17 n.80

*Illinois v. Gates*, 462 U.S. 213 (1983) ...............................................................................12 n.54

*Jaben v. United States*, 381 U.S. 214 (1965) .....................................................................12 n.55

*Jackson v. Ferrand*, 658 So.2d 691 (La. App. 4 Cir. 1994) ...........................................22, 23-24

*Jenkins v. Baldwin*, 801 So.2d 485, 496 (La. App. 4 Cir. 2001) ..................................................13

*Johnson v. Pearce*, 313 So.2d 812 (La. 1975) ....................................................................13 n.58

*Jones v. Soileau*, 448 So.2d 1268 (La. 1984) .....................................................................13 n.58

*Kelly v. West Cash & Carry Bldg. Materials Store*, 745 So.2d 743
   (La. App. 4 Cir. 1999) ...................................................................................13 n.58, 13 n.60

*Keppard v. AFC Enters.*, 802 So.2d 959 (La. App. 4 Cir. 2001) .........................................13 n.58

*Leeds v. Board of Dental Examiners*, No. 2:18-cv-01679-RDP,
   2019 U.S. Dist. LEXIS 56402 (N.D. Ala. April 2, 2019) .........................................7-8, 8 n.29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ..................................................11 n.51

*McDonald v. Board of Election Comm'rs of Chicago*, 394 U.S. 802 (1969) .........................9 n.35

*McLin v. Ard*, 866 F. 3d 682 (5th Cir. 2017) .....................................................................3-4, 6

*Miller v. East Baton Rouge Parish Sheriff's Dep't*, 511 So.2d 446 (La. 1987) ....................12-13

*Mini-Togs, Inc. v. Young*, 354 So.2d 1389 (La. App. 3 Cir. 2019).......................................14 n.67

*Moresi v. Department of Wildlife and Fisheries*, 567 So.2d 1081 (La. 1990)....................21 n.104

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) ........................................8, 9 n.34, 9 n.36

*Norred v. Radisson Hotel Corp.*, 665 So.2d 753 (La. App. 1 Cir. 1995) ...........................21 n.104

*Perrone v. Rogers*, 234 So.3d 153 (La. App. 1 Cir. 2017) ....................................17 n.80

*Quinn v. Roach*, 326 Fed. Appx. 280 (5th Cir. 2009)..................................................5-6

*Radvansky v. City of Olmsted Falls*, 395 F. 3d 291, 312 (6th Cir. 2005) ..............................7 n.26

*Robinson v. Goudchaux's*, 307 So.2d 287 (La. 1975) ...........................................13 n.58

*Ross v. Conoco, Inc.*, 828 So.2d 546 (2002) ...........................................................18

*Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923)...............................8 n.30

*State v. Rodrigue*, 437 So.2d 830 (La. 1983).......................................................12, 13

*Succession of Cutrer v. Curtis*, 341 So.2d 1209 (La. App. 1 Cir. 1976) ............................14 n.64

*Taylor v. Gregg*, 36 F.3d 453 (5th Cir. 1994).............................................4 n.11, 5 n.17

*Taylor v. State*, 617 So.2d 1198 (La. App. 3 Cir. 1993)...................................16 n.74, 23

*Trihealth, Inc. v. Board of Comm'rs*, 430 F.3d 783 (6th Cir. 2005).......................................7

*United States v. Agurs*, 427 U.S. 97 (1976) ...........................................................10

*United States v. Castillo*, 899 F.3d 1208 (11th Cir. 2018).......................8, 8 n.29, 8 n.30, 8 n.31

*United States v. Crouch*, 84 F.3d 1497 (5th Cir. 1996) ...........................................6 n.21, 6 n.22

*United States v. Vaid*, No. 4:18-CR-279 AGF NAB, 2019 U.S. Dist. LEXIS 175460 (E.D. Mo. Apr. 24, 2019) ...........................................10 n.44

*United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166 (1980)...........................................9 n.35

*Vallier v. Louisiana Health Sys., Inc.*, 722 So.2d 418 (La. App. 3 Cir. 1998) ............................22

*Walker v. Allen Parish Health Unit*, 711 So.2d 734 (La. App. 3 Cir. 1998) ...........................22-23

*Weldon v. Republic Bank*, 414 So.2d 1361 (La. App. 2 Cir. 1982)...........................13-14, 14 n.67

*White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991).......................................15-17, 20

*Willowbrook v. Olech*, 528 U.S. 562 (2000)..................................................................8 n.30

*Winn v. City of Alexandria*, 685 So.2d 281 (La. App. 3 Cir. 1996)........................................12, 13

*Zeigler v. Hous. Auth. Of New Orleans*, 118 So.3d 442 (La. App. 4 Cir. 2013) ..........................................................................................17 n.80


Constitutional Provisions

U.S. Const. amend. V ..........................................................................................7-10, 9-11

U.S. Const. amend. XI........................................................................................8 n.31

U.S. Const. amend. XIV ..................................................................................7-10, 10-11

Secondary Sources

Am. Jur. 2d, v. 1 *Abuse of Process* § 4 ......................................................................14

Am. Jur. 2d, v. 1 *Abuse of Process* § 12 ....................................................................14

Black's Law Dictionary (7th ed. 1999) ....................................................................15 n.70

Chitty, Joseph, A Practical Treatise on the Criminal Law, v. 1 (2d ed. 1826) ....................................................................15 n.70

C.J.S., v. 72 *Process* § 120 ........................................................................................14

Restatement (Second) of Torts (1948 supp.) § 46 ............................................................16 n.71

Rich, Ben A., *Equal Protection as a Means of Securing Adequate Municipal Service*, Urb. L. Ann. 277 (Jan. 1973)..........................................................8 n.31

Statutes

42 U.S.C. § 1983..............................................................................................................11

La. C.C. art. 2315................................................................................................16 n.74

La. C.C. art. 2324................................................................................................18

La. C.C.P. art. 966(D)(1) ....................................................................................17

La. C.Cr.P. art. 496 ............................................................................................2-3

La. C.E. art. 404(B)..............................................................................................3, 3 n.6, 5

## MEMORANDUM

1.      Hugo Holland ("Holland" or "ADA Holland"), individually and in his official capacity, and J. Schuyler Marvin ("Marvin" or "DA Marvin"), individually and in his official capacity (collectively, "the DA Defendants") respectfully submit the following memorandum in support of their Motion for Partial Summary Judgment.

2.      Plaintiffs' Claims I-IV, XV, and V-VI are federal claims. Claims VII-XIV and XVI are state claims. Among the federal claims, the DA Defendants are entitled to summary judgment on Claim I insofar as it is supported by the arrest for felony arson, and they are entitled to summary judgment on Claims III, IV, and XV. They are entitled to summary judgment on Claim VI insofar as it is supported by the previous claims (including XV) on which they are entitled to summary judgment. Among the state claims, the DA Defendants are entitled to summary judgment on Claim VII insofar as it is supported by the arrest for felony arson, and they are entitled to summary judgment on Claims IX, X, XI, XII, and XVI. They are entitled to summary judgment on Claim XIV insofar as it is supported by the previous claims (including XVI) on which they are entitled to summary judgment.

3.      Where the DA Defendants do not argue for summary judgment, they are entitled to dismissal for failure to state a claim upon which relief can be granted—and Plaintiffs' remaining claims have therefore been considered in a recently filed 12(b)(6) Motion to Dismiss (Doc. 139). This memorandum takes up the summary judgment issues in the order listed.

### PART ONE: THE FEDERAL CLAIMS.

### Claim I: False Arrest (Complaint ¶¶ 140-46).

4.      The DA Defendants are entitled to summary judgment on the false arrest claim insofar as it is supported by the arrest for felony arson. That arrest is discussed at ¶¶ 124-28 of Plaintiffs'

Complaint.[1] In these paragraphs, Plaintiffs make no allegation against DA Marvin. The allegations are limited to the character of an arrest warrant which "ADA Holland obtained . . . for Mr. Phillips".[2]

5.      In discussing the warrant, Plaintiffs allege only that, "[u]pon information and belief, ADA Holland obtained the arrest warrant without presenting an affidavit as required by Louisiana Code of Criminal Procedure Article 496 and intentionally omitted from [the] application exculpatory information pertaining to Mr. Phillips".[3] No particulars are given. Later they assert, in a conclusory way, that "[t]he arrest . . . was not supported by probable cause and was an intentional and malicious act".[4] No particulars are given. These remarks exhaust the discussion of the arrest for felony arson.

6.      The lack of an affidavit cannot be the predicate for a claim of false arrest. C.Cr.P. art. 496 does not require the attorney filing an information to present an affidavit. In the instant case, Phillips was "not in custody or at large on bail for the offense charged". In those circumstances, art. 496(B) requires that the *court* "shall issue a warrant for the defendant's arrest *if* the information is accompanied by one or more affidavits which establish probable cause . . ."[5] It does not require that the information *shall* be accompanied by an affidavit or *prohibit* the court from issuing a warrant if it is not.

7.      In the instant case, the court was referred to the La. C.E. art. 404(B) hearing, which it had

---

[1] Doc. 81: Pls.' 4th Am. Compl.
[2] *Id.* ¶ 124.
[3] *Id.*
[4] *Id.* ¶ 127. Arrest without probable cause is the *central* claim of Plaintiffs' entire case, but they have at no point adduced evidence of this. Todd Phillips has testified to his *belief* that other persons who should have been suspected "weren't considered very long". When asked how he knows that, he responded "Just through hearsay and what transpired with me". **EXHIBIT 1:** *Excerpt from* Deposition of Todd William Phillips 104:18-23.
[5] Emphasis added.

just conducted, in lieu of an affidavit.[6] It was that hearing—the transcript is five volumes—that was to establish probable cause.[7] The hearing consisted of the sworn testimony of many witnesses, most of whom were disinterested residents of the area where the arson had occurred.[8] The State's witnesses were cross-examined by counsel for Todd Phillips, and Phillips called witnesses of his own.[9] Probable cause was established more convincingly by the sworn testimony of many disinterested witnesses than it would have been by the affidavit of one assistant district attorney.[10]

8.      Even if the demonstration of probable cause were in some way technically deficient, ADA Holland is insulated from liability by the action of the court. "'It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.'"[11]

9.      This leaves only the allegation that "exculpatory information" was "intentionally omitted from [the] application".[12] Among Plaintiffs' allegations, only this could have tainted the deliberations of the court. "'[I]f the plaintiff shows that the "deliberations of that intermediary were in some way tainted by the actions of the defendant"'", then "'the initiating party may be liable for false arrest'".[13]

10.     However, the allegation about withheld exculpatory information is made only "[u]pon

---

[6] **EXHIBIT 2:** Affidavit of Hugo Holland ¶ 3. Article 404(B), *see* subsection (1) (sent. 1), governs the admissibility of "evidence of other crimes, wrongs, or acts".

[7] **EXHIBIT 2:** Affidavit of Hugo Holland ¶ 3.

[8] *Id.* ¶ 4.

[9] *Id.*

[10] *Cf. id.* ¶ 5.

[11] *McLin v. Ard*, 866 F. 3d 682, 689 (5th Cir. 2017), *quoting Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (*which cited Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc)).

[12] *See supra* ¶ 5, text accompanying note 3.

[13] *McLin*, *supra* note 11, at 689, *quoting Deville*, *supra* note 11, at 170, *quoting in turn Hand v. Gary*, 838 F. 2d 1420, 1428 (5th Cir. 1988).

4

information and belief". When the allegation is made, no *specific* exculpatory information is identified. Elsewhere in the Complaint, it is said that "ADA Holland . . . disregarded the evidence that at least one female was involved based on . . . anonymous calls and disregarded [the] conclusions that the real perpetrator(s) was intentionally misleading and taunting detectives".[14]

11.    The possible existence of a female perpetrator (or accomplice) is not evidence that Todd Phillips was *not* a perpetrator. And, in any event, the possible involvement of a woman was fully presented in the 404(B) hearing that warranted the court's finding of probable cause.[15] And the possibility of misleading evidence was also fully presented in the 404(B) hearing that warranted the finding of probable cause.[16]

12.    Accordingly, Plaintiffs' allegations of taint—when they are specific—are factually wrong: both the possibility of a woman's involvement in the crime and the possibility of misleading evidence were fully presented, by reference, in the warrant application. If Plaintiffs' allegations are not factually wrong, they are not specific and thus are mere allegations. "'[M]ere allegations

---

[14] Doc. 81: Pls.' 4th Am. Compl. ¶ 102.

[15] At v. 1, p. 100:26-31, the Sheriff's Office investigator, Lt. Bruce Bletz, testifies that "We received a – a call from Mr. and Mrs. Johnnie Brunson and they alleged that they had received a, an anonymous call from what they believed to be a female on their home telephone. That individual told them that to be to – to let Bubba Naron know that his green camp house on Highway 160 had been destroyed."

[16] At v. 1, p. 97:24-26, ADA Holland asks Lt. Bletz whether in 2010 "there was some evidence that was found which perhaps was either a lead or a false lead depending on how you look at it?" At l. 27, Lt. Bletz answers "Yes, sir, that's correct". Several pages of discussion follow. At 98:15-20, it is mentioned that at that time Landon Burns, Hunter Burns, and Jessica Burns could have been suspects. At 98-99 it is mentioned that a shirt labeled "L. Burns" was found at a crime scene, but that it would not have fit Landon Burns.

At v. 1, p. 100:4-15, there is discussion of evidence, including paper evidence, collected in 2011. At l. 15, Lt. Bletz conceded that the paper evidence did *not* point to Todd Phillips.

At v. 1, pp. 100-01, Lt. Bletz testified that the anonymous female caller implicated Gregory Bickham. At v. 1, p. 116:4-9, Lt. Bletz testified that crime victims suspected Hunter Burns, Landon Burns, and Jessica Bickham.

At v. 1, pp. 120-21, there is discussion of a Coleman fuel bottle found at a crime scene with the name "Todd Phillips written on it in black magic marker". At 121:26-29, Lt. Bletz testified that "it seemed a little odd to find a Coleman fuel bottle with a name written on it the way that we did and it – and it initially it almost seemed as though it was possibly staged".

of "taint," without more, are insufficient to overcome summary judgment'".[17] Because Plaintiffs have not produced proof capable of surviving summary judgment that the warrant was tainted, the DA Defendants are entitled to summary judgment on Claim I insofar as it is supported by the arrest for felony arson.

**Claim III: Due Process and Excessive Pre-Accusation Delay (Complaint ¶¶ 154-60).**

13.     The excessive pre-accusation delay claim is directed at both ADA Holland and DA Marvin.[18] In the Third Amended Complaint, it was directed against Holland but not Marvin.[19]

14.     In *Quinn v. Roach*, the Fifth Circuit considered an accusation of excessive pre-accusation delay directed at district attorney defendants.[20] The court said: "For a preindictment delay to violate the due process clause it must . . . cause the accused substantial, actual prejudice . . ."[21] To prove actual prejudice, the defendant must show "an actual loss of evidence that *would have* aided the defense".[22]

15.     In the criminal case against Phillips, the charges were dropped[23]—so there was no defense to aid. For this reason, it is impossible that evidence was lost that would have aided the defense. As Magistrate Judge Hornsby put the point, "[t]he dismissal of the charges against Phillips would make . . . a showing of actual prejudice difficult if not impossible".[24] Accordingly, the DA Defendants are entitled to summary judgment on Claim III.[25]

---

[17] *McLin*, *supra* note 11, at 689, *quoting Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) & *citing Taylor*, *supra* note 11.

[18] Doc. 81: Pls.' 4th Am. Compl. ¶ 155.

[19] Doc. 35 ¶ 155.

[20] 326 Fed. Appx. 280, 292 (5th Cir. 2009) ("Quinn is suing the District Attorney Defendants for waiting fifteen months after he was arrested to seek an indictment").

[21] *Id.* 291, *citing United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996).

[22] *Quinn*, *supra* note 20, at 291 (emphasis added), *citing United States v. Gulley*, 526 F. 3d 809, 820 (5th Cir. 2008), *citing in turn Crouch*, *supra* note 21, at 1515.

[23] Doc. 81: Pls.' 4th Am. Compl. ¶¶ 126 & 139.

[24] Doc. 47: Report and Recommendation 21 (first full sent.).

[25] As is shown in the DA Defendants' recently filed Motion to Dismiss (Doc. --), the DA Defendants also enjoy absolute immunity with respect to this claim and are therefore entitled to its dismissal.

### Claim IV: Due Process and Equal Protection (Complaint ¶¶ 161-67).

16.     "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference."[26]

17.     In the instant case, Plaintiffs have not alleged any burdening of a fundamental right or any targeting of a suspect class. Therefore, if Plaintiffs have *any* Equal Protection claim, it can only be that Phillips was intentionally treated differently than others similarly situated without any rational basis for the difference.

18.     Only one substantive paragraph in the Complaint alleges that Phillips was treated differently than others similarly situated. That is ¶ 102. The allegation is that various defendants, including ADA Holland (but not DA Marvin), "disregarded the evidence placed at various scenes identifying suspects other than Mr. Phillips, disregarded the evidence indicating that at least one female was involved based on the anonymous calls, and disregarded their own conclusions that the real perpetrator(s) was intentionally misleading and taunting detectives".[27]

19.     In addition to the allegation in ¶ 102 that Phillips was treated differently than others similarly situated, there is an allegation in ¶ 101 that ADA Holland advised or recommended this discriminatory treatment. "During the course of the investigation, ADA Holland advised Lt. Bletz, Capt. Phillips, and other BPSO deputies that any exculpatory evidence in Todd Phillips' favor should be disregarded and/or should only be considered as evidence planted by Mr. Phillips".[28]

20.     Because there is no allegation of a burdened fundamental right or a targeted suspect class,

---

[26] *Trihealth, Inc. v. Board of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005), *citing Radvansky v. City of Olmsted Falls*, 395 F. 3d 291, 312 (6th Cir. 2005). *See also Anders v. Drain*, No. 18-cv-13942, 2019 U.S. Dist. LEXIS 60464, at *10 (E.D. Mich. Apr. 9, 2019) (*quoting Trihealth*).
[27] Doc. 81: Pls.' 4th Am. Compl. ¶ 102.
[28] *Id.* ¶ 101. "BPSO" abbreviates "Bossier Parish Sheriff's Office". *See id.* ¶ 8.

Claim IV is subject to rational basis review.[29] And even if evidence was disregarded or regarded as planted, Plaintiffs have made no argument that there was no rational basis for doing so. Rational basis review asks only whether a governmental classification was "rationally related to a legitimate governmental purpose".[30] And, under this standard, "state policies enjoy 'a strong presumption of validity'".[31]

21.    Plaintiffs' own way of presenting the issue shows that this demanding standard cannot be met. Because the evidence indicated that the perpetrators were "intentionally misleading . . . detectives",[32] there was a rational basis, related to a legitimate governmental purpose, for setting aside certain evidence judged to be misleading.[33] The purpose is to ensure that investigators follow a *reliable* trail and are, in fact, not misled.

---

[29] *See Leeds v. Board of Dental Examiners*, No. 2:18-cv-01679-RDP, 2019 U.S. Dist. LEXIS 56402, at *60 (N.D. Ala. April 2, 2019) ("Under equal protection doctrine, rational basis review applies unless the classification at issue 'infringes fundamental rights or concerns a suspect class'"), *quoting United States v. Castillo*, 899 F.3d 1208, 1213 (11th Cir. 2018) (internal quotation marks omitted)), *quoting in turn Doe v. Moore*, 410 F.3d 1337, 1346 (11th Cir. 2005).

[30] *Castillo*, *supra* note 29, at 1213 (internal quotation marks omitted), *quoting Doe*, *supra* note 29, *quoting in turn City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). The term "classification" is appropriate, because Claim IV is a "class of one" claim. *See Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"), *citing Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923) & *Allegheny Pittsburgh Coal Co. v. Commission of Webster County*, 488 U.S. 366 (1989).

[31] *Leeds*, *supra* note 29, at *61, *quoting Castillo*, *supra* note 29, at 1213. Magistrate Judge Hornsby has the view that, at least for purposes of Eleventh Amendment sovereign immunity, "[a] Louisiana District Attorney is akin to a municipality, which is not considered an arm of the state". Doc. 47: Report and Recommendation 23 (last sent.).→ Even if this is true, however, it will not affect the rational basis review of Plaintiffs' Fourteenth Amendment claim. Such claims can be brought against municipalities as well as against state sovereigns—and bringing such a case against a municipality imports no distinctive standards of review. *See*, among many cases, *Hawkins v. Town of Shaw*, 303 F. Supp. 1162, 1167 (N.D. Miss. 1969) (considering an equal protection claim having to do with the provision of municipal services and applying rational basis review) & *Hawkins v. Town of Shaw*, 437 F. 2d 1286, 1293, 1288 (5th Cir. 1972) (reversing the trial court and applying heightened scrutiny because the alleged discrimination involved racial classification). For comment, *see* Ben A. Rich, *Equal Protection as a Means of Securing Adequate Municipal Service*, Urb. L. Ann. 277 (Jan. 1973).

[32] *See supra* ¶ 10. Plaintiffs present this as a "conclusion[]" of the investigators and ADA Holland, but it is clear that they regard the conclusion as one justified by the evidence. They refer to "false and misleading *evidence*" at Doc. 81: Pls.' 4th Am. Compl. ¶ 150 (emphasis added).

[33] This is what courts do when they weigh probative value against prejudicial effect, so it can hardly be an activity not rationally related to a public purpose.

22.     The availability of this plausible policy reason suffices for summary judgment. "Rational basis review is satisfied '"so long as there is a plausible policy reason" for the decision . . .'"[34] It suffices even if the policy reason was never articulated by ADA Holland, or by any decisionmaker: "the Equal Protection Clause does not demand for purposes of rational-basis review that a . . . governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification".[35] And it suffices even if ADA Holland, or any decisionmaker, was not in fact *motivated* by the policy reason: "'it is "entirely irrelevant for constitutional purposes" whether the plausible reason in fact motivated the decisionmaker'".[36]

23.     Because Plaintiffs cannot show that there was no rational relation to a legitimate governmental purpose, the DA Defendants are entitled to summary judgment on Claim IV.[37]

### Claim XV: *Brady* Violation (Complaint ¶¶ 218-24).

24.     Claim XV is a federal claim that appears among the state claims in Plaintiffs' Complaint. Claim VI is a federal claim that is parasitic on Claim XV as well as on Claims I-IV. In this memorandum, the discussion of Claim VI follows the discussion of Claim XV.

25.     Claim XV is directed at both ADA Holland and DA Marvin.[38] Plaintiffs allege that both men, and officers of the Bossier Parish Sheriff's Office, "knew of exculpatory evidence and were actively investigating, or knew of an active investigation, concerning other suspects and failed to disclose such information to Mr. Phillips or his counsel".[39] They urge that the alleged failure to

---

[34] *Elkhayyat v. City of Memphis*, No. 2:16-cv-02154-JTF-dkv, 2018 U.S. Dist. LEXIS 201370, at *74 (W.D. Tenn. Sept. 21, 2018), *quoting Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 943 (6th Cir. 2004), *quoting in turn Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).

[35] *Nordlinger*, *supra* note 34, at 15, *citing United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) & *McDonald v. Board of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969).

[36] *Elkhayyat*, *supra* note 34, at *74, *quoting Flaskamp*, *supra* note 34, *quoting in turn FCC v. Beech Communications, Inc.*, 508 U.S. 307, 315 (1993).

[37] Plaintiffs have also failed to come forward with any competent summary judgment proof that evidence *was* disregarded, and this is an independently sufficient reason entitling them to summary judgment.

[38] Doc. 81: Pls.' 4th Am. Compl. ¶ 219.

[39] *Id*. ¶ 221.

disclose was unconstitutional under "*Brady v. Maryland* and its progeny".[40]

26.      *Brady v. Maryland* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or punishment".[41] For evidence that is clearly exculpatory, the need for a request was removed by *United States v. Agurs*.[42]

27.      The concern of *Brady* and its progeny is that the defendant should not be deprived of his right to *a fair trial*. In the absence of such a deprivation, there is no breach of a prosecutor's duty. The Supreme Court made this point clearly in *Agurs*: "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose".[43] Later in the same opinion the Court reiterated the point and called it "critical": "But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial".[44]

28.      In the criminal case against Phillips, the charges were dropped[45]—so it is impossible that Phillips was denied his right to a fair trial. Magistrate Judge Hornsby made an analogous point regarding prejudice: "[t]he dismissal of the charges against Phillips would make . . . a showing of actual prejudice difficult if not impossible".[46] Because Phillips was not denied his right to a fair trial, the DA Defendants are entitled to summary judgment on Claim XV.

---

[40] *Id.*
[41] 373 U.S. 83, 87 (1963).
[42] 427 U.S. 97, 107 (1976) ("if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request was made").
[43] *Id.* 108.
[44] *Id.* For a recent case, *see United States v. Vaid*, No. 4:18-CR-279 AGF NAB, 2019 U.S. Dist. LEXIS 175460, at *8 (E.D. Mo. Apr. 24, 2019) (quoting *Agurs*).
[45] Doc. 81: Pls.' 4th Am. Compl. ¶¶ 126 & 139. *Cf. supra* ¶ 15.
[46] Doc. 47: Report and Recommendation 21 (first full sent.). *Cf. supra* ¶ 15.

### Claim VI: Policy and Custom (Complaint ¶¶ 175-81).

29.     Claim VI is directed at "the employees, agents and/or deputies of the Bossier Parish District Attorney's Office, including but not limited to ADA Holland".[47] The claim also names "DA Marvin and other policymakers and supervisors".[48]

30.     *Respondeat superior* is not available in section 1983 claims.[49] However, governmental entities are themselves persons which can be sued under section 1983.[50] In this way, policy or custom can deliver the effect of *respondeat superior*.

31.     Policy or custom is not, however, an independent cause of action: it does not abolish the requirement of particularized harm.[51] For this reason, Claim VI is not really a stand-alone claim. It must be regarded as a way to achieve the liability of superiors for the harms asserted in Claims I, III, IV, and XV.[52]

32.     We have already seen that, as a matter of law, the DA Defendants have no liability on Claim I insofar as it is supported by the arrest for felony arson, and no liability on Claims III, IV, and XV. Accordingly, the DA Defendants are entitled to summary judgment on Claim VI insofar as it is supported by the other claims (including XV) on which they are entitled to summary judgment.

### PART TWO: THE STATE CLAIMS

---

[47] Doc. 81: Pls.' 4th Am. Compl. ¶ 176.

[48] *Id*. ¶ 177.

[49] *See* Doc. 47: Report and Recommendation 22 (section on Claims V and VI, first sent.) ("The doctrine of respondeat superior does not apply to Section 1983 claims").

[50] *Id*. 690 ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other government units to be among those persons to whom § 1983 applies").

[51] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is . . . concrete and particularized"). In the instant case, even if unconstitutional policies or customs existed, Plaintiffs suffered no such particularized harm from the mere fact of their existence.

[52] Claims II and V are directed only against the Bossier Parish Sheriff's Office and its personnel.

## Claim VII: False Arrest (Complaint ¶¶ 182-85).

33.     The DA Defendants are entitled to summary judgment on the false arrest claim insofar as it is supported by the arrest for felony arson. Under Louisiana law, "if there was probable cause to arrest, then there is no false arrest cause of action".[53] Because the arrest for felony arson is an arrest pursuant to a warrant, the issue is whether a deficiency in the warrant application shows that no probable cause existed for the issuance of the warrant.

34.     Probable cause for the issuance of an arrest warrant "does not involve certainties or proof beyond a reasonable doubt or even a prima facie showing".[54] Rather, "[t]he process simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system".[55]

35.     Plaintiffs have not alleged that the charges were capricious or were insufficiently supported to justify bringing into play the further steps of the criminal justice system. Their allegation is rather that the acknowledged evidence pointing to Phillips was "misleading".[56] But "[t]he facts need not eliminate all possible innocent explanations in order to support a finding of probable cause".[57]

36.     Because Plaintiffs have alleged only the possibility of innocent explanations, and not arrest pursuant to capricious or inadequately supported charges, the DA Defendants are entitled to summary judgment on Claim VII insofar as it is supported by the arrest for felony arson.

## Claim IX: Malicious Prosecution (Complaint ¶¶ 190-94).

---

[53] *Dyas v. Shreveport Police Dep't*, 136 So. 3d 897, 903 (La. App. 2 Cir. 2014).
[54] *State v. Rodrigue*, 437 So.2d 830, 832-33 (La. 1983), *citing Illinois v. Gates*, 462 U.S. 213 (1983).
[55] *Rodrigue*, *supra* note 54, at 833, *citing Jaben v. United States*, 381 U.S. 214 (1965).
[56] *See* Doc. 81: Pls.' 4th Am. Compl. ¶ 102.
[57] *Winn v. City of Alexandria*, 685 So. 2d 281, 286 (La. App. 3 Cir. 1996).

37.     The elements of malicious prosecution are "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff".[58] Absence of probable cause is "[c]hief among these elements".[59]

38.     "Actions for malicious prosecution have never been favored, and hence, in order to sustain them, a clear case must be established."[60]

39.     We have already seen that probable cause is *present* when "enough information [is] presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system".[61]

40.     And we have seen that Plaintiffs have not alleged that the charges were capricious or were insufficiently supported to justify bringing into play the further steps of the criminal justice system. Their allegation is rather that the acknowledged evidence pointing to Phillips was "misleading".[62] But "[t]he facts need not eliminate all possible innocent explanations in order to support a finding of probable cause".[63]

---

[58] *Miller v. East Baton Rouge Parish Sheriff's Dep't*, 511 So. 2d 446, 452 (La. 1987), *citing Jones v. Soileau*, 448 So.2d 1268 (La. 1984), *Hibernia Nat'l Bank v. Bolleter*, 390 So.2d 842 (La. 1980), *Johnson v. Pearce*, 313 So.2d 812 (La. 1975), *Robinson v. Goudchaux's*, 307 So.2d 287 (La. 1975), & *Eusant v. Unity Indus. Life Ins.*, 19 So. 554 (La. 1940). *See also Hoffman v. Bailey*, No. 13-5153, 2017 U.S. Dist. LEXIS 63321, at *15-*16 (E.D. La. 2017) (restating the elements & citing *Miller*), *citing also Keppard v. AFC Enters.*, 802 So.2d 959, 965 (La. App. 4 Cir. 2001) & *Kelly v. West Cash & Carry Bldg. Materials Store*, 745 So. 2d 743, 761 (La. App. 4 Cir. 1999).
[59] *Miller*, *supra* note 58, at 452.
[60] *Jenkins v. Baldwin*, 801 So.2d 485, 496 (La. App. 4 Cir. 2001), *citing Kelly*, *supra* note 58.
[61] *Supra* ¶ 34.
[62] *Supra* ¶ 35.
[63] *Winn*, *supra* note 57, at 286.

41.     Because Plaintiffs have alleged only the possibility of innocent explanations, and not arrest pursuant to capricious or inadequately supported charges, the DA Defendants are entitled to summary judgment on Claim IX.

**Claim X: Abuse of Process (Complaint ¶¶ 195-200).**

42.     The elements of abuse of process are "'(1) the existence of an ulterior purpose'" and "'(2) a wilful [sic] act in the use of the process not proper in the regular prosecution of the proceeding'".[64] No matter how bad the purpose, there must be an *act* "not proper in the regular prosecution of the proceeding". It is the act which is the abuse, and it is the abuse "'*which is the gist of the action*'".[65] "'Regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice.'"[66]

43.     Process employed to perform a function intended by law is a *regular* use of process. "'An action for abuse of process cannot be maintained where the process was employed to perform no other function than that intended by law.'"[67]

---

[64] *Weldon v. Republic Bank*, 414 So. 2d 1361, 1366 (La. App. 2 Cir. 1982), *quoting Succession of Cutrer v. Curtis*, 341 So. 2d 1209, 1213-14 (La. App. 1 Cir. 1976).

[65] *Weldon*, *supra* note 64, at 1365, *quoting* 1 AM. JUR. 2D *Abuse of Process* § 4.

[66] *Weldon*, *supra* note 64, at 1365, *quoting* 72 C.J.S. *Process* § 120, at 1192.

[67] *Weldon*, *supra* note 64, at 1365, *quoting* 1 AM. JUR. 2D *Abuse of Process* § 12.

In *Weldon*, the plaintiff alleged that a lawsuit was filed "'only for the purpose of harassing and embarrassing your petitioner'". *Weldon*, at 1362, *quoting* Pl.'s Pet. Louisiana's Second Circuit of Appeal held that "plaintiff's petition fails to state a cause of action for abuse of process because plaintiff has failed to allege a *wilful act in the use of the process not proper in the regular prosecution of the proceeding*. He only alleges that the suit was filed with an ulterior motive." *Weldon*, at 1366.

In *Mini-Togs, Inc. v. Young*, 354 So.2d 1389, 1389 (La. App. 3 Cir. 2019), Plaintiffs sought damages "because of an alleged 'abuse of process'". The defendant was "the owner of revenue bonds issued by the City [of Monroe]". Defendant had "sued the city . . . on behalf of all bondholders" seeking to prohibit the transfer of the municipal power system to Louisiana Power and Light. That suit alleged the ground that "the transfer would cause the bonds to be insecure".

Plaintiffs' alleged "that the defendant did not file the suit for the purpose of protecting his bonds, but instead . . . for the purpose of delaying the transaction and thereby causing utility customers to bring pressure upon the City to secure or protect the jobs of 30 union electricians employed by the City in the operation of its electrical system". *Id*. 1390. Louisiana's Second Circuit of Appeal held that "[u]nder this cause of action, plaintiffs must allege irregularity in the process itself, and plaintiffs have failed to do so". *Id*. 1391.

44.    In their claim for abuse of process, Plaintiffs allege that "ADA Holland [and] DA Marvin . . . caused Todd Phillips to be arrested and charged with crimes that he did not commit".[68] Causing an arrest and a charge are acts proper in the regular course of a criminal proceeding. That Phillips did not commit the crimes cannot convert these acts into ones *not* proper in the regular course of the proceeding.

45.    Also in their claim for abuse of process, Plaintiffs allege that "ADA Holland [and] DA Marvin . . . have attempted to coerce Mr. Phillips into a plea of guilty so as to cover up the unlawful acts and omissions of the Defendants set forth hereinabove".[69] Plea bargaining is not legal "process".[70] Even so, it is proper in the regular prosecution of a criminal proceeding. And even if a plea offer were made with an ulterior motive, the existence of the motive could not convert the *act* into one not proper in the proceeding.

46.    Because Plaintiffs have not alleged the existence of an act not proper in the proceeding, the DA Defendants are entitled to summary judgment on Claim X. In the case of the claim founded on plea bargaining, this is also true because plea bargaining is not process.

### Claim XI: Intentional Infliction of Emotional Distress (Complaint ¶¶ 201-03).

47.    In 1991, the Louisiana Supreme Court recognized the tort of intentional infliction of

---

[68] In *Delcambre v. Mancuso*, 268 So. 3d 325, 327 (La. App. 3 Cir. 2019) (stating the claim and describing the arrest), an arrest was the predicate for a claim of abuse of process. Plaintiffs alleged that the arrest was improperly motivated—"that Lt. Blanchard wanted retribution because Mrs. Delcambre dismissed his child from daycare, and that Det. Melton conspired with Lt. Blanchard to achieve that end". *Id.* 332. The trial court had awarded partial summary judgment to defendants. *Id.* 329 ("the trial court granted Defendants' [sic] partial summary judgment"). Louisiana's Third Circuit Court of Appeal commented that "the Delcambres must show that they will be able to prove both elements of an abuse of process claim", and it found that "the Delcambres cannot do so". It said that "[t]he Delcambres have not shown that there was anything irregular in the *process* of Det. Melton investigating Mr. Sheeley's claims of theft or in the issue of the warrant". *Id.* 332 (emphasis added).

[68] Doc. 81: Pls.' 4th Am. Compl. ¶ 196.

[69] *Id.*

[70] Process is "[t]he *proceedings* in any action or prosecution" or it is "[a] *summons or writ*, esp. to appear or respond in court". BLACK'S LAW DICTIONARY 1222 (7th ed. 1999) (emphasis added). BLACK'S quotes 1 Joseph Chitty, A PRACTICAL TREATISE ON THE CRIMINAL LAW 338 (2d ed. 1826): "*Process* . . . signifies the *writs or judicial means* by which [the defendant] is brought to answer" (ellipsis added & emphasis on "writs or judicial means" added).

emotional distress and set out its elements.[71] The elements are: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct".[72] It is plaintiffs' burden to prove the elements of the tort.[73] The claim is disfavored in the criminal-justice context.[74] It is also disfavored when the alleged distress is unaccompanied by physical injury.[75]

48.    In their claim for intentional infliction of emotional distress, Plaintiffs do not specifically identify either DA Marvin or ADA Holland. They refer only to "Defendants".[76] Although Plaintiffs do not tie the tort to any particular defendant, they do allege the first element: "extreme and outrageous conduct".[77] They also allege the second: that the conduct "caused Todd Phillips, Jodi Phillips, Brooke Phillips, and Abby Phillips to suffer severe emotional distress".[78] But they do not allege, even generally of  "Defendants", that any person *desired* to inflict the alleged distress or *knew* that it was certain or substantially certain to result. They simply say in passing that the distress could have been foreseen—calling it a "foresee*able* result of the Defendants' egregious actions and omissions".[79]

---

[71] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The cause of action recognized by the court is "generally in accord with the legal precepts set forth in the Restatement [(Second) of Torts (1948 supp.) § 46] text and comments". *Id.* For the interpolation, *see id.* 1208.

[72] *Id.* 1209.

[73] *Id.* ("in order to recover for intentional infliction of emotional distress, a plaintiff must establish . . .").

[74] *Taylor v. State*, 617 So.2d 1198, 1205 (La. App. 3 Cir. 1993) ("We note first, as our brethren have previously observed, that in cases dealing with abuses in the criminal justice system, the determination of liability might best be approached using . . . LSA-C.C. art. 2315, rather than working with categories of torts such as . . . intentional infliction of emotional distress . . ."). La. C.C. art. 2315 is "Liability for acts causing damages" (heading) (bold font suppressed). *Cf. infra* ¶ 66 (recovery for intentional infliction of emotional distress is available only in "special circumstances").

[75] *See infra* note 103 & accompanying text.

[76] Doc. 81: Pls.' 4th Am. Compl. ¶ 202 (l. 1); *and cf. id.* ¶ 203 (l. 1 & "WHEREFORE" clause l.1).

[77] *Id.* ¶ 202 (l. 1).

[78] *Id.* ¶ 202.

[79] *Id.* ¶ 203 (ll. 1-2) (emphasis added).

16

49.     Even if true, it is not enough that some person *could* have foreseen the alleged distress. The knowledge component of the third element requires the defendant to have actually *calculated* that severe emotional distress will occur. "The conduct must be intended or calculated to cause severe emotional distress . . ."[80] Because Plaintiffs have not alleged that either DA defendant intended to cause severe emotional distress, or calculated that it would occur, the DA Defendants are entitled to summary judgment on Claim XI.

### Claim XII: Civil Conspiracy (Complaint ¶¶ 204-07).

50.     Plaintiffs allege conspiracy "to perpetrate tortious acts or conduct on, or towards Mr. Phillips".[81] They do not allege conspiracy to perpetrate tortious acts on, or directed toward, any other plaintiff.[82]

51.     Plaintiffs name only three underlying torts, although they add the boilerplate "and other acts to be shown at trial".[83] The three named torts are false arrest, malicious prosecution, and intentional infliction of emotional distress.[84]

52.     The boilerplate allegation of "other acts" is not sufficient to survive summary judgment. Rather, Plaintiffs must come forward with "factual support sufficient to establish the existence of a genuine issue of material fact".[85]

---

[80] *White*, *supra* note 71, at 1210. For identical language in the circuits, *see, e.g., Holmes v. Lea*, 250 So. 3d 1004, 1012 (La. App. 1 Cir. 2018); *Perrone v. Rogers*, 234 So.3d 153, 158 (La. App. 1 Cir. 2017), *writ denied* 269 So. 3d 709 (La. 2018); *Fletcher v. Wendelta, Inc.*, 999 So.2d 1223, 1230-31 (La. App. 2 Cir. 2009); *Deville v. Robinson*, 132 So.3d 1277, 1280 (La. App. 3 Cir. 2014); *Zeigler v. Hous. Auth. Of New Orleans*, 118 So. 3d 442, 450 (La. App. 4 Cir. 2013), *reh'g denied* 2013 La. App. LEXIS 1209* (La. App. 4 Cir. June 12, 2013); & *Almerico v. Dale*, 927 So.2d 586, 592 (La. App. 5 Cir. 2006).

[81] Doc. 81: Pls.' 4th Am. Compl. ¶ 205.

[82] *Id.* Plaintiffs go on to specify three tortious acts, and in each case the act is said to have been done to "him".

[83] *Id.*

[84] *Id*.

[85] La. C.C.P. art. 966(D)(1).

53.     Article 2324 of the Louisiana Civil Code provides liability for civil conspiracy.[86] The Louisiana Supreme Court has explained that "'[t]he actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part'".[87]

54.     Although the actionable element is the *tort*, and the tort must have been actually committed, it appears[88] not to be the case that each conspirator must have committed the tort. In *Currier v. Entergy Services*, the United States District Court for the Eastern District of Louisiana considered a claim arising under article 2324.[89] One defendant, Griffith, argued "that, because Louisiana does not recognize an independent cause of action for civil conspiracy and no independent tort claims remain against him, he cannot have conspiratorial liability as a matter of law".[90] The court rejected this view, finding that the civil conspiracy claim remains alive "where, as here, it is alleged that Griffith conspired with the remaining defendants to commit the intentional torts that remain viable as against his co-conspirators".[91]

55.     Assuming that the view of the Eastern District Court is correct, liability for civil conspiracy *could* attach to the DA Defendants even if not they, but only other defendants, were guilty of the named torts. However, in the instant case *no* defendant is liable for the named torts allegedly perpetrated on, or directed toward, Todd Phillips.

56.     We have seen that Plaintiffs have made only conclusory allegations supporting a federal claim founded on the arrest for felony arson, and have not brought forth competent summary

---

[86] Art. 2324(A) ("He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act").

[87] *Ross v. Conoco, Inc.*, 828 So. 2d 546, 552 (2002), *quoting Butz v. Lynch*, 721 So.2d 1171, 1174 (La. App. 1 Cir. 1998), *writ denied* 721 So. 2d 473 (La. 1998). *See also Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 U.S. Dist. LEXIS 126525, at *6 (E.D. La. Sept. 10, 2014) (quoting *Ross*).

[88] The DA Defendants are unaware of an authoritative state court case.

[89] *Supra* note 87, at *6.

[90] *Id.* *7.

[91] *Id.* *10.

judgment proof that the warrant was tainted.[92] For these reasons, there is no liability under federal law—for any defendant—for the tort of false arrest founded on the arrest for felony arson.

57.     We have seen that Plaintiffs have alleged, in support of a state claim founded on the arrest for felony arson, only that the evidence pointing to Phillips was "misleading" and not that the charges were capricious or insufficiently supported to justify bringing into play the further steps of the criminal justice system.[93] For this reason, there is no liability under state law—for any defendant—for the tort of false arrest founded on the arrest for felony arson.

58.     Because there is no liability for any defendant for false arrest founded on the arrest for felony arson, the DA Defendants have no liability founded on that arrest for conspiracy to commit false arrest.

59.     The most important element of the disfavored tort of malicious prosecution is absence of probable cause.[94] We have seen that Plaintiffs have alleged only that the evidence pointing to Phillips was "misleading" and not that the charges brought against him were capricious or insufficiently supported to justify bringing into play the further steps of the criminal justice system.[95] That does not provide absence of probable cause.[96] Because there was probable cause, there is no liability—for any defendant—for malicious prosecution.

60.     Because there is no liability for any defendant for malicious prosecution, the DA Defendants have no liability for conspiracy to commit malicious prosecution.

61.     An element of intentional infliction of emotional distress is "that the emotional distress suffered by the plaintiff was severe".[97] The distress must be so severe "that no reasonable person

---

[92] *Supra* ¶¶ 5 & 9-12.
[93] *Id.* ¶ 35.
[94] *Supra* ¶¶ 38 (disfavored) & 37 (absence of probable cause).
[95] *Supra* ¶ 35.
[96] *Supra* ¶ 40.
[97] *Supra* ¶ 47.

could be expected to endure it".[98] To say the least, Plaintiffs have not alleged that this level of distress was suffered by any plaintiff.[99] *A fortiori*, they have not alleged that it was suffered by the only plaintiff whose having suffered it can support the claim of civil conspiracy—namely, Todd Phillips himself.

62.     Because Plaintiffs have not alleged that Todd Phillips was severely emotionally distressed, there can be no liability—for any defendant—for intentionally inflicting emotional distress on Todd Phillips.

63.     Because there is no liability for any defendant for intentionally inflicting emotional distress on Todd Phillips, the DA Defendants have no liability for conspiracy intentionally to inflict emotional distress.[100]

64.     Because no defendant is liable for any of the torts named in Plaintiffs' civil conspiracy claim, the DA Defendants cannot be liable for conspiracy to commit any of those torts. Accordingly, the DA Defendants are entitled to summary judgment on Claim XII.

## Claim XVI: Negligence and Negligent Infliction of Emotional Distress

---

[98] *White*, *supra* note 71, at 1210.

[99] *See* Doc. 81: Pls.' 4th Am. Compl. ¶¶ 202-03 (alleging emotional distress, but giving no particulars).

[100] Plaintiffs have also not alleged the other elements of intentional infliction of emotional distress. *See id.* ¶¶ 201-03. Another element is "that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct". *Supra* ¶ 47. Plaintiffs have not alleged that any defendant *desired* to inflict severe emotional distress on Phillips. Plaintiffs' motivational claims are limited to the Sheriff, and intimate that the Sheriff was under pressure from the community to make an arrest. Doc. 81: Pls.' 4th Am. Compl. ¶¶ 84-C–85. It is no part of that claim that the Sheriff sought to inflict emotional harm on any arrestee. And Plaintiffs have not alleged that any defendant *knew* that Phillips would suffer severe emotional distress or that such distress was substantially certain to result from the defendant's conduct. Except in a conclusory way, *see id.* ¶¶ 202-03, they have not alleged the *fact* of severe emotional distress, and thus could not have alleged that any defendant *knew* that the fact would eventuate.

.     Because Plaintiffs have not alleged that any defendant desired to inflict severe emotional distress on Todd Phillips, and also have not alleged that any defendant knew that Phillips would suffer severe emotional distress or that it was substantially certain to result from the defendant's conduct, there can be no liability—for any defendant—for intentionally inflicting emotional distress on Todd Phillips.

     Because there is no liability for any defendant for intentionally inflicting emotional distress on Todd Phillips, the DA Defendants have no liability for conspiracy intentionally to inflict emotional distress.

**(Complaint ¶¶ 225-27).**

65.     This claim is not specifically directed against either DA Marvin or ADA Holland. Plaintiffs refer only to "Defendants".[101] Plaintiffs also make no *new* allegations of negligence, referring only to "[t]he negligent acts and omissions of Defendants as set forth hereinabove and further to be shown at trial".[102] The only new claim is, therefore, negligent infliction of emotional distress.

66.     The Louisiana Supreme Court has said:

> The recognition of negligent or intentional infliction of emotional distress, unaccompanied by physical injury, as a viable claim is a relatively recent development in Louisiana tort law. Although this court has permitted recovery for negligent and intentional infliction of emotional distress, such damages are available only in special circumstances which serve to guarantee against spurious claims.[103]

67.     Because the tort requires special circumstances which serve to guarantee that the claim is not spurious, each element of the tort must be specifically pleaded. The Third Circuit has identified the elements as follows:

> Recovery for negligent infliction of emotional distress has been limited to those cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Thus, in order to prove entitlement to damages for negligent infliction of emotional distress, the [plaintiffs] must prove that an independent, direct duty was owed to them . . . , that the duty afforded protection to them for the risk and harm caused, that the duty was breached, and that the mental a[n]guish suffered by them was genuine and serious.[104]

68.     Reaffirming the point, and adding that the elements to be proved must be specifically alleged "at the pleading stage", the Third Circuit said:

> Plaintiff must, at the pleading stage, allege the basic elements of a La. Civ. Code art. 2315 action when asserting a claim for negligent infliction of emotional

---

[101] Doc. 81: Pls.' 4th Am. Compl. ¶ 226.

[102] *Id.*

[103] *Arco Oil & Gas Co. v. DeShazer*, 728 So.2d 841, 844-45 (1999).

[104] *Walker v. Allen Parish Health Unit*, 711 So. 2d 734, 736-37 (La. App. 3 Cir. 1998) (citation omitted), *quoting Moresi v. Department of Wildlife and Fisheries*, 567 So.2d 1081[, 1096] (La. 1990) & *citing Norred v. Radisson Hotel Corp.*, 665 So.2d 753 (La. App. 1 Cir. 1995).

distress. Discussing a negligent infliction of emotional distress action, this court noted in Walker that the "[claimant] must prove that an independ[e]nt, direct duty was owed to them . . . that the duty afforded protection to them for the risk and harm caused, that the duty was breached, and that the mental aguish (sic) suffered by them was genuine and serious."[105]

69.     In Plaintiffs' Complaint, no independent, direct duty owed to Plaintiffs is identified. In the three paragraphs setting out the claim of negligent infliction of emotional distress, the word "duty" does not appear.[106] In fact, the Complaint *never* identifies any duty allegedly possessed by the DA Defendants, except that it alleges that "[t]he Bossier Parish District Attorney's Office, through DA Marvin, owed a duty to Mr. Phillips to properly screen, hire, train, supervise and control its agents, employees, assistant district attorneys and special prosecutors, including ADA Holland".[107] However, *that* duty cannot be the predicate for a claim of negligent infliction of emotional distress unless Holland breached some *independently identified* duty.[108] Accordingly, the first element of negligent infliction of emotional distress has not been pleaded.

70.     Second, Plaintiffs have not alleged that an identified duty protected them from the risk and harm caused. Having failed to allege a *duty*, they could hardly have done so. Further, the word "risk" nowhere occurs in Plaintiffs' Complaint, and the word "harm" nowhere occurs in Plaintiffs' Complaint. Accordingly, the second element of negligent infliction of emotional distress has not been pleaded.

71.     Third, Plaintiffs have not alleged that an identified duty protecting them from the risk and harm caused was breached. Having failed to allege a *duty*, and having failed to identify a "risk and harm", they could hardly have done so. The three paragraphs setting out the claim of negligent

---

[105] *Vallier v. Louisiana Health Sys., Inc.*, 722 So.2d 418, 420-21 (La. App. 3 Cir. 1998), *quoting Walker*, *supra* note 104, at 737. The DA Defendants have interpolated the "e"; the Third Circuit interpolated " . . .", "claimant", and "(sic)". La. C.C. art. 2315 is "Liability for acts causing damages" (heading) (bold font suppressed).

[106] Doc. 81: Pls.' 4th Am. Compl. ¶¶ 225-27.

[107] *Id.* ¶ 215.

[108] *See infra* ¶ 75.

infliction of emotional distress allege breach in only the most general terms—referring to "[t]he negligent acts and omissions of Defendants as set forth hereinabove and further to be shown at trial".[109] Accordingly, the third element of negligent infliction of emotional distress has not been specifically pleaded.

72.     Fourth, Plaintiffs have not alleged that the mental anguish suffered by them was genuine and serious. This element requires a demonstration that "special circumstances" existed, creating an "*especial* likelihood of genuine and serious mental distress", which in turn "serves as a guarantee that the claim is not spurious."[110] But Plaintiffs allege nothing creating an *especial* likelihood—they rather allege that they reacted as almost *every* law-abiding citizen might react. They allege only "severe emotional distress", and then, more particularly, "mental pain and suffering, emotional distress, fear, humiliation, and the loss of enjoyment of life".[111] But, as the Third Circuit observed, "the interest of every law-abiding citizen in being free from unwarranted or improper criminal investigation is so great that almost every such investigation might be considered extreme and outrageous and might also be considered substantially certain to cause severe emotional distress".[112] Accordingly, the fourth element of negligent infliction of emotional distress has not been specifically pleaded.

73.     Because the elements of negligent infliction of emotional distress have not been pleaded, the DA Defendants are entitled to summary judgment on Claim XVI.

**Claim XIV: Negligent Hiring, Training and/or Supervision (Complaint ¶¶ 204-07).**

---

[109] Doc. 81: Pls.' 4th Am. Compl. ¶ 226.
[110] *Supra* ¶¶ 66 & 67 (emphasis added).
[111] Doc. 81: Pls.' 4th Am. Compl. ¶¶ 226 & 227.
[112] *Taylor*, *supra* note 74, at 1205.

74.     Claim XIV is directed to "the employees, agents, and/or deputies of the Bossier Parish District Attorney's Office, including ADA Holland".[113] The claim also names DA Marvin.[114]

75.     "Generally, a case against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee is governed by the same duty-risk analysis used for all negligence cases in Louisiana."[115] The same is true of "negligent training and supervision", since "the foundation of liability . . . is the employee's tort".[116]

76.     Plaintiffs' Complaint names as defendants "Unknown Bossier Parish Sheriff Deputies, John and Jane Does 1-100".[117] However, it names no defendants in the District Attorney's Office except ADA Holland and DA Marvin.[118] Of these, the only *employee* whose tort could be the foundation of a claim of negligent hiring, training, or supervision is Holland.

77.     We have already seen that ADA Holland, as a matter of law, has no liability under Claim I insofar as it is supported by the arrest for felony arson, no liability under Claims III, IV, and XV, and no liability under Claim VI insofar as it is supported by the previous claims (including XV) on which he is entitled to summary judgment. We have also seen that ADA Holland has no liability on Claim VII insofar as it is supported by the arrest for felony arson, and no liability on Claims IX, X, XI, XII, and XVI. Accordingly, the DA Defendants are entitled to summary judgment on Claim XIV insofar as it is supported by the previous claims (including XVI) on which they are entitled to summary judgment.

### PART THREE: CONCLUSION

78.     For the foregoing reasons, the DA Defendants are entitled to summary judgment on Claim

---

[113] Doc. 81: Pls.' 4th Am. Compl. ¶ 214.
[114] *Id.* ¶¶ 215 & 216.
[115] *Jackson v. Ferrand*, 658 So. 2d 691, 698 (La. App. 4 Cir. 1994).
[116] *Coulon v. Endurance Risk Partners, Inc.*, 221 So.3d 809, 813-14 (La. 2017).
[117] Doc. 81, at caption (capitalization & bold font suppressed).
[118] *Id.*

I insofar as it is supported by the arrest for felony arson, on Claims III, IV, and XV, and on Claim VI insofar as it is supported by the previous claims (including XV) on which they are entitled to summary judgment. Also for the foregoing reasons, the DA Defendants are entitled to summary judgment on Claim VII insofar as it is supported by the arrest for felony arson, on Claims IX, X, XI, XII, and XVI, and on Claim XIV insofar as it is supported by the previous claims (including XVI) on which they are entitled to summary judgment.

Respectfully submitted,


/s/ Patrick R. Jackson
Patrick R. Jackson
La. State Bar No. 25722
Patrick R. Jackson, APLC
4442 Viking Dr., #100
Bossier City, LA 71111
Telephone: (318) 752-3335
Facsimile: (318) 752-3315
pjackson@bossierlawoffice.com
ATTORNEY FOR DEFENDANTS, HUGO HOLLAND, Individually and in His Official Capacity as Special Prosecutor for the Bossier Parish District Attorney's Office, and J. SCHUYLER MARVIN, Individually and in His Official Capacity as District Attorney for Bossier Parish

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served on all counsel of record to this proceeding on the  9th  day of April, 2020, by this Court's CM/ECF Filing System.


/s/ Patrick R. Jackson
PATRICK R. JACKSON